Earl R. DUDECK, Robert Dudeck, William E. Courter and Daisy B. Courter, (Plaintiffs) Respondents,

v.

LeRoy ELLIS, Defendant and Third-Party Plaintiff, Appellant,

v.

Pearl W. and Dorothy SCHWEIZER, Raymond G. and Ruth Schweizer, and Calvin W. and Rita Schweizer, Third-Parties Defendants, Respondents.

No. 49581.

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

Randolph & Randolph, by Lewis F. Randolph, St. Joseph, for appellant.

Downs & Pierce, St. Joseph, for respondents Earl R. Dudeck and Robert Dudeck.

Price Shoemaker and William L. Culver, St. Joseph, for William E. Courter and Daisy B. Courter.

Ronald S. Reed, Reed & Reed, St. Joseph, for respondents Pearl W. and Dorothy Schweizer, Raymond G. and Ruth Schweizer, and Calvin W. and Rita Schweizer.

DALTON, Judge.

LeRoy Ellis, defendant and third party plaintiff in this proceeding, has appealed from a judgment of the Circuit Court of Buchanan County entered against him on March 25, 1962, as hereinafter stated. A part of the action directly involves title to a number of specifically described tracts of real estate in Buchanan County, hence this Court has jurisdiction of this appeal. A number of different causes of action and cross actions to quiet title, in ejectment and

for damages in favor of different named persons and against specifically named persons, because of their alleged interest in the different tracts of real estate, have been joined in one action, apparently on the ground that some common questions of law and fact are involved.

The respondents Schweizers state: "Regardless of the nomenclature of the pleadings, these actions were separate and independent of each other, but during the course of this extended litigation (seven years) were treated by all of the parties and the court as having been voluntarily consolidated for trial * * *." Further, the record, insofar as we have been able to find from a careful examination of the entire transcript, contains no order of the trial court for a separate trial of any claim or any issue involved, and we find no objection on the part of any party to the procedure followed.

To better understand the pleadings and issues presented, a brief statement of some of the facts is required. At and prior to the year 1915 the Missouri River, in the area where the alleged causes of action arose, was running from the northeast to the southwest and was heavily eroding the south bank of the river, so that farm after farm was being washed into the river. Subsequent to that date, the U. S. Corps of Engineers began revetment work on the south shore of the river adjacent to plaintiffs' lands to prevent continued erosion, and later, in 1933 and 1934, the U. S. Corps of Engineers constructed a series of dikes extending out into the main channel of the river, more or less perpendicular to the 1915 high bank. Five of these dikes are referred to in the evidence as push dikes, apparently because they were intended to push the current of the river away from the south shore. North and south of the five push dikes, certain other dikes, referred to as trail dikes, were constructed more or less parallel to the south shore of the river. Ultimately, the main channel of the river was moved far to the north (¾ of a mile according to some witnesses), where a new

high bank was created on the south side of the river. In 1952 the main channel of the river was diverted to an area far east of the mentioned series of dikes, and portions of the bed of the river, as it existed in 1952, were exposed.

In September 1940 defendant-appellant Ellis purchased from Buchanan County certain real estate alleged to have been of island formation in the Missouri River. It lay off to the north of the 1915 high bank of the river. This alleged island, consisting of more than 215 acres, was more or less of crescent shape, with the outside curve on the north and with one end of the crescent pointing east and the other end pointing south and the inside of the crescent conforming, more or less, to the 1915 high bank of the river, but with varying distances away from the said 1915 high bank. The area between the metes and bounds description of the south shore of the alleged island and the 1915 high bank of the river (estimated at 25–30 acres) was not surveyed or sold by the county. It further appears that plaintiffs-respondents Dudecks, Bledsoe and Courters owned adjacent tracts of land facing north upon the south bank of the river. They had inherited the property and obtained deeds in partition. The legal description of their respective properties was set forth in the respective deeds obtained in 1953. The pleadings of the plaintiffs were not accompanied by any plats or drawings tending to show the relationship of any of the respective tracts of real estate to the 1915 high bank of the river, or to the alleged island, although it appears from the evidence that prior to the stabilization of the south bank of the river a portion of the real estate alleged to have been acquired by the respective parties plaintiffs had long since gone into the river. Nevertheless, they thought they still owned the area within the metes and bounds description in their deeds. A different situation existed with reference to the third party defendants Schweizers' title, but that situation need not be reviewed here in view of the conclusions we have reached.

From the foregoing statement of facts, it is not surprising that most of the issues presented by the pleadings would turn on whether or not the land purchased by defendant-appellant Ellis from Buchanan County was of island formation and first appeared as a sand bar in the river at low water mark and was wholly surrounded by water in the channel of the river; and that it thereafter grew from such a beginning until it joined the 1915 high bank of the river, with only a slough between that carried water only when the river was high, or whether the entire area of the alleged island was formed by accretions to plaintiffs' 1915 high bank of the river and, whether said accretions continued to form and move out from plaintiffs' 1915 south bank of the river to the 1952 bank of the river as it existed when the main channel of the river was first diverted to the east.

With this preliminary statement of facts we must proceed to examine the specific issues and causes of action presented by the pleadings and first determine whether or not all of the issues presented by the pleadings with reference to all of the parties have been finally disposed of by the judgment entered after the verdicts of the jury were returned.

The first petition was filed on May 4, 1956 by five named persons, as plaintiffs, against LeRoy Ellis, as defendant. An amended petition was thereafter filed December 8, 1960, upon which the causes were ultimately tried to a jury along with other issues. This petition contained seven counts and concerned three separately described tracts of real estate. In the first count the Dudecks (brothers) as plaintiffs purported to state a cause of action *in ejectment* against defendant Ellis for a specifically described 16-acre tract of real estate in Buchanan County. Damages for withholding possession since April, 1956 and for rents and profits were requested.

In a second count the same parties, as plaintiffs, stated a cause of action for damages against defendant Ellis, and alleged that he entered upon the property described in count one, and illegally cut and carried away certain cottonwood trees of the value of $1,000. (There is a recital in the transcript that this count was stricken during the course of the trial.)

In the third count the Dudecks stated a cause of action in *quiet title* against defendant Ellis for the property described in count one and alleged that defendant Ellis claimed some right, title or interest under a patent from the county, the exact nature and extent of his claim being unknown. Plaintiffs Dudecks also sought to enjoin and restrain the defendant from setting up any claim, title or interest in or to said real estate. No facts were stated in the count sufficient to invoke the jurisdiction of a court of equity.

In the fourth count Winifred Maude Bledsoe stated a cause of action *in ejectment* for a specifically described tract of real estate in said Buchanan County, containing 15 acres. She prayed for damages and for monthly rents and profits since April, 1956.

In the fifth count plaintiff Bledsoe stated a cause of action against defendant Ellis to *quiet title* to the specifically described property in count four. She stated that the exact nature and extent of defendant's claims were unknown to her. She asked to be declared the fee simple owner of the described property and that defendant be forever enjoined and restrained from asserting or claiming any right, title or interest therein. Again, this count did not state facts sufficient to invoke the jurisdiction of a court of equity, even though equitable relief was requested.

In the sixth count W. E. Courter and wife, as plaintiffs, stated a cause *in ejectment* against defendant Ellis for a particularly described tract of real estate, containing 11 acres more or less and another tract containing 2 acres more or less, describing the same, and she asked for damages, rents and profits.

In the seventh count, the Courters, as plaintiffs, stated a cause of action in *quiet title* against defendant Ellis for the real estate described in count six. They alleged that the exact nature and extent of his claims were unknown to them.

In his amended answer to these several counts filed on July 31, 1959, defendant Ellis alleged that he was the owner of a tract of specifically described real estate in Buchanan County containing 215.04 acres more or less; that he had acquired said land from said Buchanan County on the 14th of October, 1940 by a patent issued by the county, which patent had been filed of record on the same date; that the described land formed as an island in the former bed of the Missouri River; that the island had been surveyed and sold for the benefit of the county school fund; and that he had purchased it. He further alleged that there had been added to the south side of the island by the process of reliction an area of land lying between the south shoreline of said island and the former south high bank of the river; that the area had ultimately filled in with sediment and dirt; and that defendant now owned to the center of the slough, for which said land he had filed a counterclaim and cross petition in said action. He further stated that, subsequent to his acquisition of said island, the Missouri River along the north and west side of said island had receded northward; that lands by accretion had been added on the north side thereof to the south shoreline of the Missouri River, as it existed in the year 1952; and that, after the main channel of the river had been changed, there was added to defendant's land by the process of reliction an area of land extending to the center of the former bed of the Missouri River, as it existed just prior to its being cut off and its course changed; and that defendant Ellis then owned all of the land lying north and west of his original island survey to the center of the former 1952 bed of the Missouri River on the north and west.

In view of the issues here we need not review other detailed allegations of defendant Ellis' answer to each of the seven counts of the plaintiffs' petition, except to say that he denied their claims and realleged facts previously stated.

Subsequently, on November 7, 1961, defendant Ellis filed his first amended cross claim against the plaintiffs and as a third party plaintiff he stated claims against certain third party defendants, as heirs of plaintiff Bledsoe, deceased, to wit, Arlene F. DuPont and Eva L. Graski. By this amended cross claim against the plaintiffs and the named third party defendants, he sought to *quiet and determine the title* to two specifically described tracts of real estate, to wit, *Tract No. 1* being the alleged island purchased from Buchanan County, which he claimed under his patent from the county, and by adverse possession for more than ten years.

He also alleged that he had cleared said land of willows and timber and placed same in cultivation; and that he had expended in excess of $20,000 for such purposes and for which he alleged he was entitled to recover, if dispossessed of said land by plaintiffs and third party defendants.

Further, in his said counterclaim and cross action to *quiet title to Tract No. 2,* defendant Ellis stated that said tract lay between the south shoreline of the alleged island, as surveyed and sold to him by the county, and the former 1915 high bank of the Missouri River, as it existed south of his alleged island when said island was conveyed to him by the county. He alleged that when he had purchased the island an arm of the river still ran between the south shoreline of the island and the 1915 high bank of the Missouri River; that, thereafter, as a result of floods and high water in the river, the said arm of the river had been caused to be filled in with dirt, sand and silt and to be built up to the approximate level of defendant Ellis' alleged island; that the river had ceased to flow

along the south shore of his island, "except during extreme high water stages of the Missouri River." He further joined as third party defendants DuPont and Graski and alleged that they claimed some interest in said tracts, the exact nature he could not describe.

As such third party plaintiff in said counterclaim and cross action, defendant asked the court *to ascertain, try and determine the estate, title and interest of the parties, plaintiffs and defendants, and by its judgment to declare third party plaintiff the fee simple owner of both Tract 1 and Tract 2* and that all other parties, plaintiffs or third party defendants, had no right, title or interest therein. As an exhibit, he attached to said counterclaim and cross action Exhibit "A" purporting to set forth the detailed description by metes and bounds of his 215.04 acres of island formation and also a detailed description by metes and bounds of his alleged Tract 2.

On August 10, 1959, defendant Ellis as a third party plaintiff stated a cross claim against the three Schweizer Brothers and their wives and one James J. Muff *to quiet and determine the title* to the said two tracts of real estate, as specifically described in his action to quiet and determine title against the original plaintiffs and the parties claiming under plaintiff Bledsoe, then deceased. In this cross claim, Ellis, as third party plaintiff, again stated that Tract 1 was an island that had formed in the bed of the Missouri River, or was land that formed by the recession of, or the abandonment by the river; that the same had been properly surveyed and sold by Buchanan County; and that a patent had been issued to him for the property described in Tract 1. He further alleged that Tract No. 2 was a body of land, as stated, between the south shoreline of the aforesaid island and the former (1915) high bank of the river; that said area had formed by the process of reliction; and that such defendant became and was the owner of the north half of said lands so formed. He further asserted

that the additional third party defendants claimed an interest in the described property, Tracts 1 and 2, the exact nature of which was unknown to him; and that third party defendant James J. Muff had asserted a claim to Tracts 1 and 2, the exact nature of which was unknown to third party plaintiff Ellis.

Thereafter, Ellis, as third party plaintiff, stated a claim in his cross petition *in ejectment* against the three Shweizers and their wives for the land specifically described in Tracts 1 and 2 of Ellis' cross claim to quiet and determine title against other parties defendants. He alleged that he was the owner and entitled to possession of this land on May 4, 1959, and he further prayed judgment for damages, rents and profits, as alleged.

Defendant Ellis, as a third party plaintiff, further stated a cause of action for trespass against third party defendants Schweizers, alleging that they trespassed upon the lands of third party plaintiff Ellis, including Tracts 1 and 2 as described in his prior cross claim to *quiet title* to said Tracts No. 1 and No. 2. He also alleged that said third party defendants entered upon said land and pulled up, removed and threw away survey stakes placed by surveyors to mark the southern boundary line of Ellis' Tract 2; that said third party defendants had plowed up about two acres of growing wheat on said land in the fall of 1958; and that said third party defendants had deprived him of planting crops in said year to his damage. He prayed for damages actual and punitive against said third party defendants

Thereafter, on September 8, 1959, the said Schweizers, as third party defendants, filed an answer and counterclaim to third party plaintiff's cross claim and petition wherein they denied the specific allegations of third party plaintiff's petition and further answered, and by counterclaim and cross claim against third party plaintiff Ellis they stated a cause in *quiet title* and for affirmative relief against him with

reference to the specifically described real estate lying between their property on the south and the south line of the alleged island owned by Ellis, wherein they alleged that their property abutted the Missouri River and that over a period of years accretions formed and added to their land and by reason thereof they owned said lands and *accretions* thereto. Third party defendants alleged that they became vested with the ownership of said land; and that the accretions mentioned in Tract 2 were *accretions to their property*. They further based their claim to title upon the fact that they had been in the actual, open, notorious, continuous, exclusive, hostile, adverse, peaceable and uninterrupted possession of the mentioned accreted land between their lands and the lands of Ellis for a period of more than ten years preceding the filing of their petition. They further denied that third party plaintiff Ellis had any right, title or interest in and to the property described in third party plaintiff's petition. On the same date, September 8, 1959, they filed an answer as third party defendants to the cross claim *in ejectment* of third party plaintiff Ellis and denied the allegations of his said petition in ejectment against them. In a further count they answered third party plaintiff's *cross bill for trespass* against them, as filed by third party Ellis, and denied the allegations of said count for trespass and denied the allegations with reference to the removal of stakes on lands owned and occupied by third party Ellis.

Thereafter, on September 24, 1959, third party plaintiff Ellis filed an answer to the counterclaim of the third party defendants Schweizers, et al., and denied the allegations as to the alleged accretions and as to the *adverse possession* of said property and also stated that third party plaintiff "makes no claim of ownership to any of the land in Sec. 3, Twp. 57, R. 36, lying east and south of the former high bank of the Missouri River." He further alleged that he made no claim of ownership to the south half of the lands lying between the

1915 former high bank of the Missouri River and the original island purchased by him from Buchanan County. In his said answer Ellis further alleged that third party plaintiff Ellis owned the north half of said land formed by reliction and described as Tract 2 in the cross claim of third party plaintiff therein; and that third party defendants Schweizers owned the south half thereof "if they own the high bank land."

With the pleadings in the condition, as stated, the parties began the trial of this cause before the Honorable Frank D. Connett, Jr., Judge of the Circuit Court of Buchanan County, Missouri, Division No. 3, *and a jury*.

Certain minor modifications of the pleadings, immaterial here, were authorized and a stipulation was entered between plaintiff Joseph Heater and defendant Ellis, whereby Heater dismissed his claim against Ellis, and defendant Ellis was authorized to proceed with his counterclaim against Heater by default. We find no other references in the transcript to the claims of plaintiff Heater.

At the close of the evidence offered by the Dudecks and Courters, the defendant Ellis had moved for a directed verdict on all counts of their petition against him. The court sustained the motion to the extent that it directed a verdict for defendant Ellis, as to plaintiffs' Dudecks alleged cause of action for damages, but it overruled the motion as to the part directed against the Dudecks' and Courters' several counts *in ejectment* and *quiet title*.

In the course of the trial, the attorneys for defendant Ellis had offered to show, if permitted, that witness Ellis would testify that it cost him $135 an acre to clear the land claimed by him and to get it ready for farming; that he had improved the property from the time he paid $1.25 per acre for it; that he was entitled to show what he had expended to improve the property and to increase its value by such im-

provements; and that he had cleared some 200 acres or more of the mentioned island in getting it ready for cultivation. He further offered the same evidence in rebuttal of plaintiffs' claims for rents and profits, since the land would not have had any rental value, except a nominal value and except for the work done by defendant in clearing the property. The court denied the offer. The transcript fails to show why the evidence was excluded.

Near the close of the case the transcript recites that an interlocutory decree had been entered against third party defendants Graski and DuPont. The court indicated that, at the close of the case there would also be a final judgment and decree for Ellis against Bledsoe, but, when her death was suggested, it was pointed out that the third party defendants Graski and DuPont (apparently her heirs) were in default and had been for two and one-half years.

At the close of all the evidence a motion for a directed verdict in his favor was presented by defendant and third party plaintiff Ellis. It was overruled. Motions for directed verdict on behalf of third party defendants Schweizers were presented and apparently overruled. A further motion by third party plaintiff Ellis for a directed verdict in his favor as to Tract 1 was taken up and considered by the court and sustained, as against the third party defendants, and it was adjudged and decreed by the court that Ellis was vested with a fee simple title to all that portion of land described as an island, which lay west of the east line of Sec. 3, Twp. 29, R. W. Thereafter, under numerous instructions the case was submitted to a jury and the following verdicts were returned upon forms of verdict submitted to them:

"(1) Earl R. Dudeck, Robert Dudeck, William E. Courter & Daisy B. Courter, Plaintiffs, vs. LeRoy Ellis, Defendant. We the jury in the above entitled cause, find the issues in favor of Earl R. Dudeck, Robert Dudeck, William E. Courter and Daisy B. Courter, upon their Petition.

"We further find for Earl R. Dudeck, Robert Dudeck, William E. Courter and Daisy B. Courter, and against LeRoy Ellis on his counterclaim. /s/ [Signatures of ten jurors, including the foreman, are omitted.]"

"(2) LeRoy Ellis, Third Party Plaintiff, vs. Pearl W. Schweizer and Dorothy Schweizer, his wife, R. G. Schweizer and Ruth Schweizer, his wife, and C. W. Schweizer and Rita Schweizer, his wife, Third Party Defendants.

"We, the jury, find for the third party defendants, Schweizers, on their counterclaim to quiet title against Ellis, and against third party plaintiff Ellis on said counterclaim. /s/ Ralph A. Bush, Foreman."

"(3) LeRoy Ellis, Third Party Plaintiff, vs. Earl W. Schweizer and Dorothy Schweizer, his wife, R. R. Schweizer and Ruth Schweizer, his wife, and C. W. Schweizer and Rita Schweizer, his wife, Third Party Defendants.

"We, the jury, find for the third party defendants, Schweizers, on third party plaintiff Ellis' action. /s/ Ralph A. Bush, Foreman."

As stated, the record presented fails to show that the trial court at any time ordered the separate trial of any claim or issue and that all counts of all the parties in quiet title or ejectment, and including third party plaintiff's claim for damages for trespass against the Schweizers, were all tried to the court and jury in one proceeding.

At the close of all the evidence no instructions were offered or refused or given with reference to any of the numerous counts stating causes of action in ejectment for any of the various tracts of real estate described in the several counts in ejectment or in the count for damages for trespass to Ellis' described real estate.

The judgment on these verdicts purported to vest title in the Dudecks for certain particularly described real estate extending out to the 1952 high bank of the Missouri River, and in the Courters also to certain specifically described real estate extending out to said 1952 high bank of the Missouri River. The decree further stated that defendant Ellis had no right, title or interest in the real estate owned by either the Dudecks or the Courters and that he had no title or lien in said real estate as asked in his counterclaim against said plaintiffs.

It was further adjudged that, in accordance with the verdict of the jury, the title to certain specific real esate in the decree described was vested in the Schweizers and defendant Ellis had no interest therein. Costs were taxed against defendant Ellis.

Further, an interlocutory judgment against Arlene F. DuPont, Eva L. Graski and James J. Muff was approved and final judgment was entered against these third parties defendants and in favor of defendant Ellis and he was decreed to be the owner of the real estate therein described and that the named parties, third parties defendants, had no right or title therein.

■ While the issue has not been raised by the parties, it becomes our duty to determine whether or not a final appealable judgment has been entered in the case. Deeds v. Foster, Mo.Sup., 235 S.W. 2d 262, 265 [4]. The right of appeal is purely statutory and, therefore, when the statutes do not give such right, no right exists. Walker v. Thompson, Mo.Sup., 338 S.W.2d 114, 116 [2–5]; Supreme Court Rule 82.01, V.A.M.R. and § 512.020 RSMo 1959, V.A.M.S.

■ For the purposes of an appeal a judgment must be a final judgment and it must ordinarily dispose of all parties and all issues in the case, unless the trial court has ordered a separate trial of any claim or issue, or has specifically designated the particular judgment as a final judgment for the purposes of appeal. Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W. 2d 693, 695 [2], 34 A.L.R.2d 972; Magee v. Mercantile-Commerce Bank & Trust Co., 339 Mo. 559, 98 S.W.2d 614, 616; Supreme Court Rules 74.01 and 82.06; § 511.020 RSMo 1959, V.A.M.S. If no such final appealable judgment has been entered by the trial court the appeal is premature and must be dismissed. Deeds v. Foster, supra. Our statute does not allow parties to appeal piecemeal, nor does it permit them to bring up only part of the issues in a case while all other issues remain undecided. There is an exception to this rule, however, as stated, where the trial court has expressly ordered a separate trial of a particular claim or issue.

■ Since it appears from the record presented in this case that the trial court did not order a trial of the quiet title counts separate and apart from all of the other counts stating causes of action in ejectment and for trespass to real estate, the judgment entered on the quiet title counts is not a final appealable judgment. In such case the trial judge should have held the verdicts of the jury on the quiet title counts in abeyance until a final judgment could be entered disposing of the whole case, including the other counts stating causes of action.

In his brief filed in this court appellant recognized the situation when he states: "The case seems to have been submitted to the jury on quiet title. Although the only official order of the court, was one sustaining Ellis' motion for directed verdict as to plaintiffs' claim for damages and overruling same as to ejectment and quiet title. Ejectment seems to have been lost sight of by both sides in the instructions and in the decree rendered on the findings of the jury."

As stated, the ejectment counts are not mentioned in the instructions and no issues with reference to them were submitted to the jury. No verdicts were returned on the ejectment counts and they are not dis-

posed of by the judgment presented on appeal.

We must and do hold that the appeal in this case is premature and must be dismissed. It is so ordered.

All concur.