Robert L. LIPSEY, Plaintiff-Appellant,

v.

Frances Sue LIPSEY (now Branch),
Defendant-Respondent.

No. 9009.

Springfield Court of Appeals,
Missouri.

Feb. 16, 1971.

George B. Scott, Jr., Poplar Bluff, for plaintiff-appellant.

Robert H. Jones, Kennett, for defendant-respondent.

STONE, Judge.

Plaintiff Robert L. Lipsey appeals from a decree of modification entered on *September 23, 1969,* which vested in defendant Frances Sue Lipsey "the complete care and custody" of two children, Charlotte Dee and Annett Gail, then nine and seven years of age, respectively, born of the marriage of the parties. That union had been terminated on *February 25, 1963,* by a decree which granted defendant a divorce upon her cross-bill and "by agreement between plaintiff and defendant" ordered "that Lee and Maebell Lipsey, paternal grandparents, are to have the care, custody and control of the infant children," with "the costs of their support ordered paid by plaintiff." A subsequent proceeding to modify instituted upon defendant mother's motion (not included in the transcript before us), was terminated by a decree entered on *March 13, 1967,* which recited, inter alia, (a) that "by agreement of counsel, all evidence adduced in this cause is to be considered, together with evidence in causes No. 67071 and No. 67072 [not otherwise identified here]" and (b) that "the court being advised that the parties, upon advice of their respective attorneys, have reached an agreement of the issues involved in said *motion to modify* . . . approves said agreement," and then decreed modification of the original decree in that "the permanent care and custody of the minor children . . . is vested in Mr. and Mrs. Lee Lipsey [paternal grandparents], with Frances Sue Branch, natural mother, to have temporary care and custody every other weekend . . . and thirty days in the summer, beginning July 15th to August 15th and . . . that the custody of said children be alternated between Mr. and Mrs. Lee Lipsey and Frances Sue Branch as to the holidays of Easter, Labor Day weekend, Thanksgiving, Chirstmas Eve and Christmas, and the children's birthdays, until further order of court."

The instant proceeding was initiated on July 16, 1969, by the filing of the mother's second motion to modify alleging (a) her remarriage and residence in Kennett, Missouri, (b) the grant of "certain specific rights of visitation" to her by the decree of March 13, 1967, (c) the failure of the paternal grandparents to comply with that decree in that the grandmother "refused to permit defendant [mother] to have the temporary custody of the above-named children on July 15, 1969, for a thirty-day visit . . . and further . . . told defendant 'she would never permit the children to visit [their mother] again,'" and (d) movant's ability "to provide a home and education and decent living conditions" for the children, by reason of all of which the mother prayed modification granting to her their "permanent

care and custody." Following a hearing, another decree of modification was entered on *September 23, 1969,* vesting "the complete care and custody" of the children in defendant mother. From that decree, plaintiff father appeals.

■ With characteristic candor, plaintiff's capable counsel frankly conceded in oral argument that his client does not charge that defendant mother is unfit to have custody and does not ask custody for himself but rather asserts that the mother did not affirmatively establish her fitness and therefore seeks to restore the decretal status prior to the modification of September 23, 1969, i. e., to return the children to the major custody of their paternal grandparents who filed no pleading and no notice of appeal—this, no doubt, because grandparents are, in the eyes of the law, strangers to the proceeding to modify custody and have neither standing to litigate a motion to modify nor enforceable custodial rights by reason of their past actual custody. Stockton v. Guthary, Mo.App., 415 S. W.2d 308, 311(3), and cases there cited; Neustaedter v. Neustaedter, Mo.App., 305 S.W.2d 40, 43(5). See In re Wakefield, 365 Mo. (banc) 415, 425, 283 S.W.2d 467, 473(13).

■ This situation immediately casts a cloud upon instant plaintiff's standing to appeal. For the right of appeal is purely statutory and no such right exists unless accorded by statute [Kansas City Power & Light Co. v. Kansas City, Mo., 426 S.W.2d 105, 107(2); Dudeck v. Ellis, Mo., 376 S. W.2d 197, 204(2); In re Adoption of LLV and SAV, Mo.App., 457 S.W.2d 2, 3(2); Hutchinson v. Wesley, Mo.App., 455 S.W. 2d 21, 23(1); V.A.M.R. 82.01], and V.A. M.S. § 512.020 grants a right of appeal only to "[a]*ny party to a suit aggrieved by any judgment . . . ."* (Emphasis ours) "It may be said that an aggrieved party, within the meaning of the rule governing appeals, is one having an interest recognized by law in the subject matter which is injuriously affected by the judg-

ment, or one whose property rights or personal interests are directly affected by the operation of the judgment or decree. This does not include all those who may happen to entertain desires on the subject . . . ." 4 Am.Jur.2d Appeal and Error § 183, p. 692. "In legal acceptation a party or person is aggrieved by a judgment, order, or decree so as to be entitled to appeal . . . whenever it operates prejudicially and directly upon his property or pecuniary rights or interest, or upon *his* personal rights, and only when it has such effect." 4 C.J.S. Appeal & Error § 183b(1), p. 559. So in Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841, 845(12), a proceeding to modify the custodial provisions of a divorce decree, it was said that "[g]enerally speaking, a party or person is aggrieved by a judgment, order, or decree whenever it operates prejudicially and directly upon *his* property, pecuniary, or personal rights." See also Dubinsky Brothers, Inc. v. Industrial Com'n. of Missouri, Mo. (banc), 373 S.W. 2d 9, 12–13.

■ The original decree of February 25, 1963, granted full custody of the children to the paternal grandparents; and the decree of March 13, 1967, to which the present proceeding to modify was directed, continued major custody of the children in the paternal grandparents but granted minor custody to defendant mother. Under both of those decrees, plaintiff father had nothing more than his natural parental right of access to or visitation with his children [M—— L—— B—— v. W—— R—— B——, Mo.App., 457 S.W.2d 465, 466(1); Middleton v. Tozer, Mo.App., 259 S.W.2d 80, 85(4)]; and he still has that natural parental right under the decree of September 23, 1969, from which he now appeals. Neither the original divorce decree nor either of the subsequent decrees of modification granted more to him and in this proceeding he seeks nothing more for himself. Clearly, the instant controversy is between the paternal grandparents and defendant

mother, and plaintiff's appeal is a vicarious one for the benefit of those grandparents.

We recognize that appeals are favored in the law and that, where doubt exists as to the right of appeal, it should be resolved in favor of that right. Listerman v. Day & Night Plumbing & Heating Service, Inc., Mo.App., 384 S.W.2d 111, 120(11), and cases there cited. But, having found no definition or discussion of "aggrieved party" which within the limits of fair intendment would endow instant plaintiff with that status, it becomes our duty to dismiss his appeal.

■ We hasten to assure the interested parties and their counsel that, notwithstanding this disposition of the appeal, we have carefully reviewed the entire transcript, examined the briefs and all authorities cited therein, and in every respect considered the case as if it were here determinable and to be determined on the merits. This we have been moved to do, ex gratia, because of the state's relaionship as parens patriae in all proceedings involving child custody [In re Shepler, Mo. (banc), 372 S.W.2d 87, 90; In re J. L. L., Mo. App., 402 S.W.2d 629, 634(5); Ex parte De Castro, 238 Mo.App. 1011, 1015, 190 S. W.2d 949, 951(1)] and because of the paramount and overriding judicial concern in all such proceedings to determine, insofar as is humanly possible, what will best serve and promote the children's welfare. Asbell v. Asbell, Mo.App., 430 S.W.2d 436, 438(4); J— G— W— v. J— L— S—, Mo.App., 414 S.W.2d 352, 360(5); C— v. B—, Mo.App., 358 S.W.2d 454, 459(1).

When the parties were divorced on February 25, 1963, plaintiff father was 27 years of age, defendant mother was 23, and their children were about 2½ and 1. As the decree of that date recited, the children were, by agreement of the parties, placed in the care and custody of the paternal grandparents, who resided about seven miles from Campbell, Missouri, presumably in a rural area. The grandparents had eleven children of their own, five of whom then ranging in age from about 5 to 12 were still living in the family home. Plaintiff father was a member of the same household "about three years" after the divorce on February 25, 1963. However, he remarried on December 16, 1967, and at the time of hearing resided at Bernie, Missouri, about fourteen miles from his parents' home.

We are not informed, and it is not here important, what considerations motivated either defendant mother's first motion to modify or the agreement of the parties approved in the court's decree of March 13, 1967, which in substance granted major custody to the paternal grandparents and minor custody to defendant mother on alternate weekends, holidays and (children's) birthdays and for thirty days each summer. But the record does establish, and it is here signally significant, that the children's visits with their mother pursuant to the decree of March 13, 1967, generated discord between the paternal grandmother and the mother. The grandmother said that when the children returned from visiting with their mother, "they were so nervous and wrecked I just couldn't even get along with them, they were just sick, and I'd have to sit up with them all night." And the mother testified that "when I'd take the children back [to the grandmother] she'd call me and we'd get into it on the phone about she didn't want me to have the girls any longer . . . ."

This festering abscess of dissension came to a head during June and July 1969. The *grandmother's* testimonial account was that "sometime in June" the children had "stayed a week [with their mother] and they came back sick . . . . They were so nervous, and they wouldn't sleep by theirselves and I had just gotten them for the last two years where they would sleep by theirselves—as long as I had had them, they were tore up, nervous, and just wouldn't rest." So, when the mother called about picking up the children on July 15 for her 30-day

summer custody, the grandmother admittedly "told her then that she couldn't have them again." The *mother* quoted the grandmother as having said in that conversation, "no, you can never have them again, you can never see them outside my home any more." In this connection, we note that, when the court asked *plaintiff father*, "did you ever hear your mother [the paternal grandmother] make a statement she was not going to permit the children to visit with Mrs. Branch [their mother]," he responded in the affirmative and then conceded that was agreeable with him "at the time."

It has been often recognized judicially that the frequent shifting of custody from one divorced parent to the other, entailing as it does recurrent physical and emotional uprootings and adjustments for the children, affording to estranged adults frequent opportunities for the reactivation of old resentments and suspicions and for the creation of new ones, and exposing the children to the bickering and backbiting of those adults, is not calculated to further and advance the welfare of the children but rather tends to provoke strain and tension and to engender instability and insecurity. Stockton v. Stockton, Mo.App., 459 S.W.2d 532, 535; J— G— W— v. J— L— S—, Mo.App., 414 S.W.2d 352, 359(3); M— L— v. M— R—, Mo. App., 407 S.W.2d 600, 604(11); Wood v. Wood, Mo.App., 400 S.W.2d 431, 437(8). A fortiori, the same must be true with respect to such shifting of custody from grandparents to a divorced parent, no matter how devoted and dedicated the grandparents may be to their custodial task, often a thankless one initially thrust upon them by young, immature or irresponsible parents. That the paternal grandmother in this case so recognized is made crystal clear by her agonized voluntary imploration to the trial judge, "I would like for those kids to be placed in one home permanently, with no interference; and may God be the judge of it, and you"—a supplication serving to underscore the gravity of the determination with which human agencies are charged in this and other proceedings dealing with mortal lives and immortal destinies.

In situations where, as here, the custodial contest actually is one between the natural mother and the paternal grandparents, our courts have always considered that custody by the natural parent better serves the children's interests unless it is made to appear that the parent is unfit, incompetent or unable to care for the children, or unless the welfare of the children manifestly calls for a different disposition under the circumstances shown in evidence. State ex rel. Crockett v. Ellison, 271 Mo. (banc) 416, 196 S.W. 1140(2); Stockton v. Guthary, supra, 415 S.W.2d at 312(7); B.S.P. v. W.W.W., Mo.App., 411 S.W.2d 834, 837(4); I— v. B—, Mo.App., 305 S.W.2d 713, 719(4).

Defendant mother has remarried and resides with her husband in Kennett, Missouri. Both testified that they owned their home, were financially able to support and educate the children, and were desirous of having the children in their household. Without objection, defendant expressed the opinion that the children were "happier now [in her home] than they were before" and said that "we don't have any trouble with them sleeping." A neighbor, Mrs. June Williams, with "five little girls" in her family, stated that the (Lipsey) children had "been coming to my house off and on whenever they were at [defendant mother's] house for the past year, on weekends," that her little girls also went to defendant's home to play, that she had been in defendant's home several times, and that the Lipsey children appeared to be "very satisfied and well adjusted and happy" in that home.

■■ As plaintiff's counsel emphasizes, custodial provisions may be enforced through contempt proceedings [Hachtel v. Hachtel, Mo.App., 291 S.W.2d 201, 207(6); Perr v. Perr, Mo.App., 205 S.W.2d 909, 913(6)], but courts are not restricted to

that method of enforcement. And conduct by one having major custody of children which deprives a parent of her decretal rights of minor custody or visitation may constitute a changed condition justifying and requiring modification of the decree. Garrett v. Garrett, Mo.App., 464 S.W.2d 740, 743; P—— D—— v. C—— S——, Mo. App., 394 S.W.2d 437, 446(12); Rutstein v. Rutstein, Mo.App., 324 S.W.2d 760, 763(4); Wilson v. Wilson, Mo.App., 260 S.W.2d 770, 780(11); Green v. Perr, Mo.App., 238 S.W.2d 924, 927(2); Olson v. Olson, Mo. App., 184 S.W.2d 768, 773(13).

■ As hereinbefore pointed out, instant plaintiff does not charge that defendant mother is unfit to have custody but rather that she did not affirmatively establish her fitness. Although her evidence was not as detailed and complete as it perhaps should have been and might have been [cf. Stockton v. Guthary, supra, 415 S.W.2d at 313], we think it sufficient to have permitted and warranted entry of the trial court's decree of modification and to have required our affirmance of that decree (but for dismissal of the appeal), under the settled principle that, although not binding on appellate review, the findings of the trial court in cases of this character are not to be lightly regarded or easily disturbed, but that the appellate court should defer to such findings unless it is firmly convinced that the children's welfare requires some other disposition. P—— D—— v. C—— S——, supra, 394 S.W.2d at 447(16), and cases there cited.

One aspect of the trial proceedings may merit mention for the guidance of court and counsel in similar proceedings. Immediately prior to the hearing, plaintiff's attorney orally moved the court to require defendant to bring the children into court because "my client is entitled to have those children present in court to be questioned in court under oath and cross-examined . . . ." Defendant's counsel objected that "they are too young to be subjected to direct and cross-examination in this court . . . ." and the court took plaintiff's motion under advisement. That motion was never ruled, and plaintiff's counsel made no subsequent request either for a ruling thereon or for an opportunity to qualify the children as competent witnesses. V.A.M.S. § 491.060; Hildreth v. Key, Mo.App., 341 S.W.2d 601, 608–610(17–21).

■ At the conclusion of the hearing and after both parties had rested, the court (as he subsequently stated in the record) "with [only] the court reporter present, but not taking down what was said, has spent approximately ten minutes in chambers visiting with the two children . . . ." No matter how well-intentioned the court may have been, that in-camera "visit" with the children should not have been conducted. Roper v. Roper, Mo.App., 461 S.W.2d 330; Benjamin v. Benjamin, Mo.App., 370 S.W.2d 639, 642–643. However, on the record brought to us it would not have constituted reversible error because (a) although foreadvised of the court's intention so to talk privately with the children, plaintiff's counsel interposed no prior or subsequent objection thereto [Benjamin v. Benjamin, supra, 370 S.W.2d at 643], (b) there was no offer as to what the testimony of either child would have been [Benjamin v. Benjamin, supra, 370 S.W.2d at 643], (c) the transcript does not indicate that the trial judge's decision was actuated by or bottomed on facts not appearing in the record [contrast Roper v. Roper, supra, 461 S.W.2d at 331–332], and (d) the record evidence was, as we have said, adequate to have permitted and warranted the decree of modification.

The appeal of plaintiff Robert L. Lipsey should be and is dismissed.

TITUS, P. J., and HOGAN, J., concurs.