In re the **MARRIAGE OF James Carl GREENE, Jr.,**
**Petitioner-Respondent-Appellant,**

and

**Patricia May Greene, (now known as Patricia May Kent)**
**Respondent-Appellant-Respondent.**

Nos. 13849, 13889.

Missouri Court of Appeals,
Southern District.

May 29, 1986.

Christopher J. Stark, Springfield, for petitioner-respondent-appellant.

Gregory J. Smith, P.C., Springfield, for respondent-appellant-respondent.

GREENE, Judge.

These consolidated appeals are from judgments and orders of the trial court modifying a dissolution decree, and denying relief on counterclaims filed by one of the parties.

Patricia May Greene and James Carl Greene, Jr. (Carl) were married on August 20, 1960. Their union produced three children, Deborah Lynn, born May 8, 1962, Rhonda Lea, born November 16, 1968, and James Carl III (James), born May 4, 1971.

In 1980, Carl petitioned to dissolve the marriage. Patricia defaulted, and a decree of dissolution was entered on July 11, 1980. Deborah had reached her 18th birthday prior to entry of the decree. The decree provided that custody of Rhonda and James be awarded to Patricia, that Carl be granted visitation rights "as per agreement attached and incorporated into decree," awarded Patricia $50 a month child support for each child, and made orders concerning disposition of the marital property. The agreement referred to in the visitation order was a property settlement and separation agreement prepared by Carl's attorney and executed by the parties on April 29, 1980. Among other things, the agreement provided that "neither Husband or Wife will permanently remove the children from Greene County or Christian County without prior court order. Permanent removal will be deemed to be a period longer than 14 consecutive days." The dissolution decree contains the notation, "Separation agreement filed marked Exhibit A and found to be conscionable."

On September 19, 1980, Patricia married Bob Kent. Prior to the dissolution, Patricia, Carl, and the children lived in Nixa, Christian County, Missouri. After her marriage to Kent, Patricia, Kent, and the children lived in Springfield, Greene County, Missouri. Kent and his brother were in partnership in a business called Kent Chemical Company, which serviced several carpet cleaning enterprises, including Rug Doctor Rents of Springfield. On January 9, 1981, Carl married Donna Jones, and moved from Nixa to Springfield.

In May of 1982, Kent was offered employment with Rug Doctor, Inc., headquartered in Fenton, Missouri. This position offered better medical insurance benefits and salary than Kent was receiving in Springfield. A proposed move to Eureka,

Missouri, which is approximately 180 miles northeast of Springfield, was discussed with the children. Patricia advised them they would not move if the children were opposed. Both children approved of the move, and evidenced a desire to live in Eureka with Kent and their mother. Kent then accepted the employment offer.

On July 14, 1982, Patricia wrote to Carl, advising him of Kent's acceptance of the job offer, and the family's contemplated move. Carl did not directly respond to Patricia's letter, but told the children that if they wanted to move to Eureka, he would not stand in their way. Since she had not received expressed consent from Carl to the move, Patricia retained counsel for the purpose of obtaining Carl's consent. Carl was advised that if he would consent to the move, Patricia would pay all expenses for the children's transportation from Eureka to Springfield so that Carl could exercise his visitation rights. Patricia did not receive a positive response to her offer, so her attorney, on August 10, 1982, filed a document in the circuit court of Greene County, Missouri, entitled "Request for Authority to Remove Minor Children from Greene County, Missouri." The document stated the reasons for the contemplated move. A copy of the request was mailed to Carl's attorney. This triggered a legal battle, the scope and complexity of which boggles the mind.

On August 12, Carl filed a special appearance and motion to quash "Purported Service and Filing" of the request to move. He contended in his motion that Patricia was obligated to bring the matter up via a motion to modify. His admitted purpose in this approach was to delay a trial court ruling on the matter until after the children were enrolled in school. On August 13, Patricia served notice on Carl that the motion to quash would be called up for determination on Monday, August 23.

Patricia, knowing that the school year was about to commence, and not wishing to interrupt the children's schooling, enrolled the children in school at Eureka. The family moved to Eureka on August 20. By letter dated August 23, Patricia informed Carl of the move, and advised him that she would bring the children to Springfield so that he could exercise his visitation privileges. She did so, at her own expense until some months later when the trial court entered an interlocutory order relieving her of that responsibility.

The motion to quash was not taken up on August 23, due to the fact that the trial judge and Carl's attorney were involved in a jury trial on that date. There is nothing in the legal file that indicates a disposition of the motion to quash. On October 14, 1982, Patricia filed a motion to modify the dissolution decree seeking court approval of the move, an increase in child support, and reasonable attorney fees. Carl contested the motion, and filed a two-count counterclaim. In Count I, Carl requested specific performance of that part of the property settlement agreement requiring court approval before the children could be permanently removed from Greene and Christian Counties, and requested that the court order Patricia to return the children to Greene County, and to pay Carl $10,000 for attorney fees. Count II requested that the trial court find Patricia in contempt of court for not obtaining court approval before moving the children, that she be fined not less than $10,000 for such contempt, and that she be ordered to pay Carl's attorney fees. The counterclaim was later amended by adding Count III, which alleged that Patricia breached the property settlement agreement by moving the children without prior court approval, for which breach Carl requested $25,000 damages, plus reasonable attorney fees.

Between August 10, 1982, when the written request for court permission to move the children was made, and June 28, 1984, when judgment was entered on the motion to modify and Count II of the counterclaim, 67 entries in the trial court's minutes reflect a complete abuse of the legal process. Interrogatories, objections to interrogatories, motions for sanctions, motions to compel production of documents, motions for separate trial, hearing on various com-

plaints, ad infinitum, ad nauseum, paraded across the trial bench. Most of this paper war was generated by Carl's attorney, and turned a simple question that could have been resolved by a competent trial judge within 24 hours into a legal circus that lasted three and one-half years.

A motion to sever for separate trial Counts I and III of the counterclaim was denied by the initial trial judge but was later, for some reason not clear to us, reconsidered and sustained by his successor, after the first judge had been disqualified by Carl.

On January 17, 1984, the case finally came to trial on the motion to modify and Count II of the counterclaim. After hearing evidence, the trial court sustained Patricia's motion to modify. In the judgment, the relocation of the children to Eureka was approved, and made retroactive to August 10, 1982, and the child support was increased from $50 a month to $150 a month per child. The trial court also entered judgment for Patricia and against Carl on Count II of his counterclaim.

Carl and Patricia both appealed from these judgments and orders, with Patricia contending the trial court erred in severing Counts I and III of the counterclaim from the balance of the issues, and in denying her attorney fees, and Carl claiming trial court error for a variety of reasons.

On review, this court determined that Patricia had filed motions for summary judgment in her favor on Counts I and III of the counterclaim; that such motions had been taken under advisement by the trial court and, that in the interest of judicial economy, a ruling of the trial court on such motions was necessary before proceeding further. The appeals were held in abeyance, and the trial court was directed to rule on the motions on the basis of the present record.

The trial court complied with our directive to rule, and sustained the motions for summary judgment on Counts I and III of the counterclaim. Carl was given additional time to file supplemental briefs attacking such rulings, which briefs were filed in due course, and followed by Patricia's response. In his supplemental brief, Carl limits his claim of error to the trial court's ruling sustaining the motion for summary judgment on Count III of his counterclaim and thereby abandons any claim of error regarding the court's ruling on Count I. *Henderson v. Smith,* 643 S.W.2d 882, 883 (Mo.App.1982). Since there is now a final judgment in the cause from which appeal will lie, as all issues raised by the pleadings have been determined, we consider all points relied on by the parties in their initial and supplemental briefs. In such consideration, we observe that in our review of the trial court's judgment concerning Patricia's motion to modify, we are bound by the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), which mandates that the trial court's judgment must be upheld if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on erroneous declaration or application of law.

Carl's first allegation of error concerns that portion of the trial court's judgment on the motion to modify which increased the amount of child support he was required to pay from $50 a month to $150 per month per child.

In her motion to modify, Patricia alleged as a change of circumstances justifying an increase in child support that "[t]he expense for maintaining and caring for the minor children of this marriage has substantially increased due to the increased age of the minor children, and due further to the general increase in the cost of living."

At the time of the decree of dissolution, in which the award of $50 per month per child was made, Rhonda was 11 years old and James was 9. At the time of the hearing on the motion to modify, Rhonda was 15 and James was 12. The record shows that the testimony of the mother alone, relative to increased expenses in caring for the children, would have been sufficient to justify the increase in child support. There was additional evidence, consisting of summaries of both party's ex-

penses and income, before the trial court. In addition, Carl admitted at trial that $50 per month was inadequate to support a child, and that it would probably take $3,000 a year to rear a child. He admitted he could pay more child support, but simply did not want to since Patricia and the children had moved to Eureka against his wishes.

▇ The determination as to whether there has been a change of circumstances justifying the modification of a child support award lies within the discretion of the trial court. The record convinces us there was no abuse of discretion in ordering the increase in child support. In fact, it was long overdue. Evidence of increased costs in raising children is sufficient evidence of a considerable and lasting change of circumstances to warrant modification of a child support award. *Cooperman v. Holdinghausen*, 629 S.W.2d 489, 490 (Mo.App. 1981). The evidence in the record supports the increase. The assignment of error has no merit.

Carl next contends that the trial court erred in refusing to hold Patricia in contempt of court for moving the children to Eureka when she did not have court permission to do so. He contends that such refusal was against the weight of the evidence, and that the trial court erroneously declared and applied the law in making such judgment.

On this issue, the trial court made the following findings of fact and conclusion of law:

36. The Court finds that the Mother made a good faith and bona fide effort to obtain court approval to remove the children's residence to Eureka, Missouri, but that the Father's actions prevented a prompt hearing upon such issue. The Court further finds that the best interests of the children, which is this Court's paramount concern, were served by such move.

. . . .

38. The Court further finds that the Respondent has not acted in a manner which is contemptuous of this Court or

any of its orders, and that Respondent has not willfully or maliciously violated this Court's orders.

. . . .

40. The Court finds that the Respondent should not be penalized for removal of the children's residence from Greene County, Missouri to Eureka, Missouri, retroactive to the filing of Respondent's Request for Authority to Remove Minor Children from Greene County on August 10, 1982.

. . . .

5. [The] Court concludes that Respondent has not been contemptuous of this Court or its orders, that she has not willfully or maliciously violated any of this Court's orders, and she did not remove the children from Missouri, and that she has made a good faith and bona fide effort to comply with this Court's orders and the parties' Separation Agreement, and that, therefore, judgment should be entered for Respondent and against Petitioner upon Count II of Petitioner's First Amended Counterclaim.

▇ A finding of contempt for failure to obey a court order is not justified absent a clear showing that a party bound by such order willfully and contumaciously refuses to obey the order. *Payne v. Payne*, 635 S.W.2d 18, 23 (Mo. banc 1982). Here, Patricia sought court approval for the move before it was made, but Carl's admitted dilatory tactics prevented a hearing on that issue. A review of the evidence convinces us that any fair-minded judge would have approved the move when it was requested. A court has the duty to protect the integrity of its orders, but whether non-compliance shall be punished as contempt lies within the court's discretion. *In re Blankenship*, 553 S.W.2d 307, 309 (Mo.App.1977). We find no abuse of discretion here. Carl's shrill insistence that the mother of his children be criminally punished for moving the children, under the circumstances shown in the record, is mean spirited, and indicates the motivation behind his costly, time-consuming action to try to prevent his children from moving to their new home, even

though such move was in their best interest and they desired to go.

■ Carl next argues the trial court erred by not including in its decision findings on "controverted fact issues." The point goes on to say counsel had requested specific controverted fact issues without saying what they were, and also asserts that the trial court erroneously declared and applied the law "as it pertains to controverted fact issues specified by a party," without saying how the trial court erroneously applied or declared the law, or how he was prejudiced by such alleged conduct. The point as stated is violative of Rule 84.04(d)[1] as it does not state briefly and concisely wherein and why the trial court's action was erroneous. Carl's attorney was notified by this court of such deficiency, but did not see fit to correct it. We do not have a duty to resort to the record or argument portion of his brief to try and determine "wherein and why" the trial court erred. *Turner v. State*, 669 S.W.2d 642, 644 (Mo.App.1984). The point was not properly preserved for appellate review.

In his next point, Carl asserts the trial court erred by making inconsistent findings in its judgment on the issue of whether the obligation to pay child support should "abate one-half" during periods when Carl "exercises visitation of seven consecutive days or more." He contends this provision conflicts with certain portions of the visitation schedule included in the decree, without stating in the point what those conflicts are, and that certain terms of the schedule are inconsistent with findings of the trial court "at the time of the hearing in April, 1984," without stating what those findings were, how they were inconsistent, or how he was prejudiced by these alleged inconsistencies.

Here again, Carl's attorney was warned of the deficiency in his original brief in this regard and did nothing to correct it. The point was not preserved for review.

In his next point, Carl argues that the trial court erred in making sixteen different findings of fact and three conclusions of law, which are too lengthy to be repeated here, because there was no substantial evidence to support the findings of fact, such findings and conclusions were against the weight of the evidence, and such findings and conclusions erroneously declared the law in regard to the legal requirements that must be met to support a child support modification.

This point is a rehash of the matters raised in point one and has no merit. As previously stated, Patricia presented substantial evidence of a change of circumstances in regard to the need for increased child support that was so substantial and continuing as to make the present award unreasonable. This evidence met the requirement of § 452.370[2] and justified the child support modification made by the trial court. This being so, even if we assume there was some doubt as to certain findings and conclusions made by the trial court, such deficiencies would not affect the validity of, or prevail against, the judgment. *Wilhoit v. Wilhoit*, 599 S.W.2d 74, 78 (Mo. App.1980). The point has no merit.

We next address Carl's allegations of error raised in his supplemental brief which claims the trial court erred in rendering summary judgment for Patricia on Count III of his counterclaim. This count, as previously stated, was a suit for damages for breach of contract, with the alleged breach being the moving of the children to Eureka without court permission. Carl requested $25,000 damages and demanded a jury trial.

Carl claims there were genuine issues of material fact in Count III which had not been determined, such as the amount of damages, attorney fees, expenses, and costs he would be entitled to if he recovered on Count III and, therefore, summary judgment was inappropriate, citing Rule 74.04.

1. Missouri Rules of Court, V.A.M.R.

2. RSMo 1978, as amended.

Carl's contention would be correct except for the fact that Patricia was entitled to summary judgment on Count III as a matter of law. Carl's brief does not cite a single case which he claims is precedent for his assertion that he had a right to sue Patricia for damages for breach of contract because she made the move to Eureka, without obtaining prior court approval, or explain why citations of authority supporting his claim are not available. Because of this unexplained lack of precedential support, we could summarily reject his argument, *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978), but because of the importance of the issue, we briefly address it.

Carl's exclusive remedy, if he felt that Patricia had failed to comply with the decree, was to move the trial court for an appropriate order, as is provided in § 452.-365.[3] Such motion could propose a contempt citation, *State ex rel. Rosener v. Lasky*, 552 S.W.2d 728, 730 (Mo.App.1977), or a modification of the custody decree to provide for a change of custody, alleging the move constituted such a change of environment for the children that their welfare was adversely affected. *Lipsey v. Lipsey*, 464 S.W.2d 529, 533–534 (Mo.App.1971).

■ There was no legal basis for the initiation and maintenance of a separate legal action for damages (Count III of the counterclaim) because of the failure to obtain court approval prior to the move. We feel compelled to point out that while it is law that a custodial parent who has custody by virtue of a Missouri decree, and who is domiciled in the state, cannot remove the children from Missouri for a period of more than 90 days without prior court approval, § 452.377,[4] there is no law requiring court approval prior to moving the children from one geographical area to another within the state. Carl attempted to make such a law through a separation agreement prepared by his lawyer, but he had no right to do so.

In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children. *See Kline v. Kline*, 686 S.W.2d 13, 17 (Mo. App.1984); *In re Dusing*, 654 S.W.2d 938, 942 (Mo.App.1983).

It is evident from a careful reading of the hundreds of pages of motions, suggestions, briefs, etc., in the record that Carl's real complaint is not that the children's welfare was endangered by the move, but that his ability to "monitor their progress" and supervise their training and development was compromised by their move to a new home 180 miles up the road, thus straining the concept of family unity. The family unity was not lost when Patricia and the children moved to Eureka. It was lost when Carl petitioned to dissolve his marriage to Patricia, and succeeded in doing so, and cannot be resurrected by separation agreements or court decrees.

■ The inclusion of the clause in the separation agreement restricting the abode of the children to Greene or Christian County, without consideration of what factors might justify or prohibit such a move, was void as against public policy, and had no legal effect that justified bringing an independent legal action for damages based on its violation. This being so, Count III did not state a cause of action, and Patricia was entitled to judgment as a matter of law. The point has no merit.

In her appeal, Patricia's first contention is that the trial court erred in sustaining Carl's motion to sever Counts I and III of his counterclaim and in failing to enter judgment in her favor on those counts.

Her point is well taken, but is rendered moot by our action in remanding the cause to the trial court with directions that it rule on Patricia's motion for summary judgment on those counts, and by our ruling here on Carl's claims of error arising from the trial court's sustaining of such motions after remand.

3. RSMo 1978.

4. RSMo Supp.1984.

In her remaining point, Patricia contends that the trial court erred when it failed to award her reasonable attorney fees. We agree.

Section 452.355 [5] provides that the trial court, after considering all relevant factors, may order a party to a dissolution action to pay the costs incurred and attorney fees of the other party for legal services rendered, either before or after judgment. While the allowance of such costs and fees are discretionary, *S.G.E. v. R.L.J.*, 527 S.W.2d 698, 703 (Mo.App.1975), that discretion was abused here by a failure to make such awards.

The facts of this case are simple. Approximately two years after her marriage to Bob Kent, Kent was offered a better job in St. Louis County. The proposed move was discussed with the children, who approved of the move. There was no reasonable factual or legal basis for the father to oppose the move. While never seeking legal custody of the children himself, the father perverted the legal process by delaying a hearing on the merits for nearly a year and a half from the onset of the litigation. To compound this injustice, he bitterly opposed an increase in child support from the original amount granted, even though he acknowledged the original support level was inadequate, and that he could afford to pay more.

The only logical conclusion to be drawn from a review of the pleadings, the transcript, discovery proceedings, docket entries, and briefs is that Carl's primary desire was to vexatiously harass Patricia and create unnecessary litigation expense for her. Of particular interest is the fact that in his prayers for relief in his counterclaim, Carl did not seek custody of his children or modification of his visitation privileges, but rather sought vengeance by requesting punitive relief, such as a $10,000 fine, and sought to have Patricia's family life disrupted by requiring her to live in Greene County with the children, while her husband lived and worked in St. Louis County.

It is a sad commentary on the judicial system to note that Carl was aided and abetted in this exercise of vindictiveness by counsel who threw every conceivable legal roadblock possible in the path of Patricia, who had considered the wishes of her children and notified their father before making the move, which he had told the children he would not oppose.

The public is becoming critical, and rightly so, with the delay in processing their legal grievances through the courts, and of the attendant costs generated by excessive lawyer activity in simple issue cases. As the result of delaying tactics and procedural overkill on the part of some attorneys, in violation of the Code of Professional Responsibility, Rule 4, DR 7–102(A)(1,2), lawyers who are frugal with their clients' time and money by seeking prompt and common sense solutions to their legal problems, are tarred with the same brush as their more litigious counterparts, through guilt by association. It is high time the courts put an end to this type of legal monkey business by penalizing those who, with the help of willing lawyers, seek to pervert the judicial system through delaying tactics and procedural overkill.

■ After considering all relevant factors, including the ability of the respective parties to pay, which is shown by the record, we hold that the trial court abused its discretion by not awarding attorney fees to Patricia's attorney for legal services performed, and expenses incurred at the trial level and on appeal.

The trial court's judgment and orders regarding the motion to modify and the three counts of the counterclaim are affirmed, with the exception of its orders denying attorney fees and expenses to Patricia for services performed at the trial and appellate level, and its order regarding abeyance of child support during the father's visitation periods. Those orders are reversed and the cause is remanded to the trial court for the sole purpose of hearing evidence as to the amount to be awarded

**5.** RSMo 1978.

Patricia for attorney fees and expenses, and to enter judgment for her on those matters in such amount as seems reasonable to the trial court, and to make more specific as to when and for how long child support payments should be abated during Carl's visitation periods.

TITUS and CROW, JJ., concur.

HOGAN, J., concurs specially.

PREWITT, C.J., and FLANIGAN, J., concur in result.

MAUS, J., not participating.

HOGAN, Judge, concurring specially.

I concur; I concur because of other litigation which has come before this court, and with the express understanding that the opinion condemns a *practice*, and *not* the conduct of any particular advocate.