**Duane Franklin BAKER, Plaintiff-Respondent,**

v.

**Rebecca Ann BAKER, Defendant-Appellant.**

**No. 25619.**

Kansas City Court of Appeals, Missouri.

Dec. 6, 1971.

Rehearing Denied Jan. 6, 1972.

Dan Hale, Strop, Watkins, Roberts & Hale, St. Joseph, for defendant-appellant.

Richard W. Mason, St. Joseph, for plaintiff-respondent.

DIXON, Commissioner.

We are reviewing a custody order incident to a divorce. The husband-plaintiff filed suit for divorce alleging general indignities. The wife cross filed, likewise alleging indignities. The court granted

plaintiff-husband a decree of divorce, custody of the male child, David, four years old, and granted custody of the female child, Lisa, two years old, to the defendant. The court ordered the plaintiff should have both children in his home on one day of each weekend; and on alternating days of each weekend, the defendant should have both children in her home. The husband was to provide all transportation for the three round trips from St. Joseph to Mound City each weekend. The defendant appeals solely because of the order splitting the children and the effect of the visitation order which defendant-wife contends is an emotionally disturbing experience because of the continued re-separation of the children each weekend. Plaintiff and defendant were married March 27, 1965 and divorced May 27, 1970. Plaintiff, at the time of the marriage, was twenty-six years of age and an over-the-road truck driver by occupation. The defendant was then less than nineteen years of age. On July 21, 1966, a son, David, was born and on December 16, 1967, a daughter, Lisa, was born. The parties separated February 16, 1970.

The evidence before the trial court related to both the proof of the allegations of the parties as to divorce and to the question of the custody of the minor children. In the interest of brevity, we omit a review of evidence which relates solely to the bickerings of the parties and their mutual recriminations. It is sufficient to say, as the court found and as respondent admits, that no evidence affecting the right to custody on a basis of moral fitness was presented. Summarized hereafter is the evidence which in any way affects custody.

At the time of the marriage, the parties established their home in an apartment in St. Joseph. After approximately one year, they moved to a trailer park in the St. Joseph area and after the birth of David in July of 1966, they moved to a four-acre tract a mile North of I–29 on 71 Highway in Andrew County. An older home consisting of five rooms and a bath was located upon this tract. The nearest neighbor was approximately two hundred yards away, and the property is approximately six or seven miles from St. Joseph, Missouri. At the time the house was purchased, the husband was employed as an over-the-road truck driver making approximately $255 per week. At the time of trial, he was employed as a driver-salesman for the Falstaff Wholesale Brewery, making about $125 a week. The wife, during the period the parties lived in the country, spent a good deal of time visiting with her parents and a sister of the husband who operated a beauty parlor in her residence. The husband asserted that his wife, on several occasions, had permitted wet diapers to remain on the hardwood floor. The wife admitted this had occurred, but denied the frequency. She claimed she did all the washing and ironing and cleaned the house as best she could. The parties apparently disagreed about the disciplining of the children and argued in front of the children concerning this problem.

The only evidence touching upon the conditions surrounding the care of the children prior to the separation of the parties relates principally to the physical condition and mental status of the older child, the boy. There was evidence that the husband was easy on this child, and there was evidence that the wife disciplined him more severely. There was some evidence that this child was nervous and had received some medication upon a doctor's orders for this nervous condition. The wife asserted she had been advised by the doctors to be firm with the boy, and she contended that he suffered from temper tantrums. The husband denied that, but asserted that the wife slapped the boy to make him eat. He said the reason for the boy not eating was that he did not like certain foods. The wife's version of this problem was that the child did not eat unless made to do so and would throw his food for which she would punish him. The sister of the husband who operated a beauty shop testified that

the mother spent a good deal of time in her shop and was cross and irritable with her children after they spent some time in the combined home and beauty shop. She likewise testified to a general lack of care insofar as feeding the children during these long visits to her home and beauty shop. She said the wife had told her that the wife had made a mistake in getting married and that the wife was not good for her children. There was some evidence indicating that the husband and wife disagreed as to the daughter's personal care, the husband asserting that she was not kept clean and the wife asserting that she had a skin problem which was aggravated by washing her hair. The husband admitted that the children were generally fairly clean insofar as their clothing was concerned.

The evidence touching upon the parties' respective ability to provide a home for these children indicates that the husband is continuing his residence in the home in the country and that he has made arrangements for a baby sitter to stay with the children while he is at work. The wife has returned to her home in Mound City, Missouri, where she has rented a home and is employed by her mother as a waitress working from 4:30 in the afternoon until 10:30 at night. She likewise has made arrangements for babysitting during the hours of her work. Her home is seven blocks from her place of employment. As a general observation upon the evidence presented in this transcript, all of the evidence touching on factual matters concerning the relationship of the parties and their fitness to have custody of the children on the husband's side of the case came from persons related by blood or marriage to the husband, the only evidence otherwise being with respect to the character and general reputation of the husband. On the wife's side of the case, the same comment is applicable. Neither party has produced any witness with respect to the fitness of either parent to deal with the problem of the custody of these children who was not naturally inclined to favor the party who produced them as a witness.

Confronted with this paucity of testimony relating to the custody question, the trial court divided the custody of the children. We have examined carefully the court's comments at the conclusion of the case and his written judgment entry and note that he found both the husband and the wife fit persons to have the custody of the child placed with each of them, and he recognized that splitting the children was not the best solution.

The decree recites that it is in the best interest of the male child that he be placed in the care and custody of his father and, with respect to the female child, that she be placed in the care and custody of her mother. Upon that order and the factual basis outlined above, we are called upon to determine the rightness of the trial court's decision with respect to custody.

■ We note that our scope of review in an action of this nature is to review both the law and the evidence, to make our own findings of fact and conclusions of law, giving deference to the trial court upon issues of credibility and entering the judgment that should have been made if we reach a different conclusion than the trial court.[1]

Insofar as the law applicable to matters of this kind is concerned, there is no need to lengthen this opinion by multiple citations for the well-established principles that govern our review.

■ Paramount and imperative to our review is the best interest and welfare of the minor children. Commonly felt and understood beliefs as to what serves the best interest of children have been articulated as "rules" or "principles" in child custody cases. Two such are involved

1. Rule 73.01(d), V.A.M.R. (Note 281). Section 510.510, V.A.M.S.1969. Section 512.160, V.A.M.S.1969.

here: "the mother is the proper custodian of children of tender years;"—"children ought not to be separated."

But mothers do not always receive custody of children of tender years[2] and sometimes siblings are separated by court decree.[3] The rationale of this decisional process is understood when we consider the rules or principles for what they really are, judicial statements of our common understanding and experience that such relationships normally foster the best interests and welfare of the children. However, normalcy in familial relationships does not always exist. Cases reaching contrary results demonstrate findings of aberrations from normalcy which harmfully affect the best interests of the child. The morally dissolute, neglectful mother is not by reason of her maternal relationship awarded custody.[4] A court will not hesitate to separate brothers or sisters when it finds that continuance of the relationship is harmful to either.[5] We thus conclude that where decisional variances occur, there must be a finding, evidentially supported, that the best interests and welfare of the children are served by a departure from the normal pattern of family relationships.[6]

■ We have carefully pondered the evidence in this record touching upon the custody of the children and do not find evidence that would support a finding that the best interests and welfare of these children would be best served by their separation.

As this court said in Kimble v. Kimble, Mo.App., 399 S.W.2d 630, 634:

"From the evidence adduced we are unable to conclude:

(1) That the mother has not provided a good and salutary home.

(2) That the mother is not a suitable person to continue to have custody of all four of the children.

(3) That the movant has sustained the burden of showing it would be for the best interests of the four children, or of any one of them, for custody to be taken from the mother and placed with the movant."

Nor is this a case where we would be inclined to respect and follow the determination of the trial court on conflicting evidence because of our awareness of his superior opportunity to see the witnesses and react to their testimony from the personal observation which we are denied. Whatever dispute between the parties existed with respect to the nervousness of the boy or the cleanliness of the girl, it does not afford a sufficient basis to prove that the best interests and welfare of these children would be served by separating them. The boy's nervousness is not related to the presence of his sister, and certainly the cleanliness of the girl is not related to the presence of the boy.

We, therefore, reverse the order of the trial court respecting the custody of these children and direct that the custody of the children be placed with the mother.

Recognizing the father's rights in these children, we further provide that the father shall have the custody of both children from Friday evening at 6:00 p. m. until Sunday at 6:00 p. m. every other week and that the father shall have the uninterrupted right to their custody for a period of four weeks during the summer months at a time to be agreed upon by the parties or in the event they are unable to agree to be determined by the trial court. The trial

2. L—— v. N——, Mo.App., 326 S.W. 2d 751.

3. Jensik v. Boggs, Mo.App., 435 S.W.2d 398.

4. L—— v. N——, loc. cit.

5. Jensik v. Boggs, loc. cit.

6. For a review of the many factors courts have considered sufficient to justify separation, see 92 A.L.R.2d 926.

court is directed to take further evidence with respect to the question of child support and to make such order as in the circumstances is appropriate.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.