In re the **MARRIAGE OF Sandra Lee ZIGLER, Petitioner-Appellant,**

**and**

**Terry Lee Zigler, Respondent.**

**No. 36375.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Oct. 28, 1975.

Speer, Herzog & Ponfil, Theodore D. Ponfil, Alan G. Gerson, John J. Gerst, Evans & Dixon, Henry D. Menginin, St. Louis, for appellant.

William R. Gartenberg, Clayton, for respondent.

RENDLEN, Judge.

This appeal is from the award of custody of a minor child incident to a judgment

dissolving the parties' marriage. Neither challenges the judgment of dissolution; however, petitioner-mother appeals from that portion of the judgment awarding custody of the four year old son to the respondent-father.

Appellant's assignments of error may be summarized as follows: The trial court erred in (1) granting custody of the child of tender years to the father as there was insufficient credible evidence to find the mother lacked emotional or mental stability to serve as custodian; (2) admitting portions of the Physician's Desk Reference and allowing testimony relative thereto without proper identification or foundation; and (3) giving insufficient weight to the testimony of the social worker whose child custody study was made and submitted under § 452.390, RSMo 1973.

As provided by Rule 73.01(3), V.A. M.R., on appellate review in this non-jury case, "[t]he court shall review the case upon both the law and the evidence as in suits of an equitable nature. Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." While the judgment of the trial court should not be set aside unless erroneous, "such is not a mandate prescribing judicial 'blindness' because in reviewing this case de novo this court must be cognizant of the further duty to reach its own conclusions based on the law and the evidence presented by the case." *Powers v. Powers*, 527 S.W.2d 949 (Mo.App.1975). The court is to enter such judgment as the trial court should have entered. *Glaves v. Glaves*, 523 S.W.2d 169, 172[8] (Mo.App.1975). In this frame of reference we examine the evidence.

Appellant Sandra Zigler, 18 years of age, and respondent Terry Lee Zigler, 21 years of age, sometimes referred to herein respectively as mother and father, were married in St. Louis County in September, 1969, and to that marriage a son Casey Lee was born

March 10, 1971. In January, 1973, the couple separated and suit for dissolution was filed in April of that year. The court, with the parties' consent, issued an order *pendente lite*, granting the mother custody of the child with temporary custody to the father every other weekend. The mother was awarded $30 a week for temporary child support. At all times since birth, except for periods of visitation, the child has been with his mother.

At trial the parties stipulated to a division of marital property and though the mother asked maintenance for herself of one dollar per year, the father sought none. They agreed the father would pay child support of $30 per week for child support if the mother were awarded custody of their child. The comments of respondent's attorney indicated the suggested weekly payment was based upon certain financial statements, which unfortunately were not made part of the record.

Appellant, 23 years of age at the time of trial, was employed as a medical secretary in the Department of Preventive Medicine at the Washington University School of Medicine where she has worked for two years. She earns a monthly gross of $475, from which she nets $342. Temporarily residing with her parents she leaves the child with a regular babysitter during working days and plans to rent a two bedroom apartment in St. Louis County in the Kirkwood-Webster Groves area if awarded custody of the child. She has arranged to send him to Jack and Jill Nursery, a Montessori school on the outskirts of Kirkwood. The child is in good health and appellant personally supervises his diet, tends his personal needs, and provides his daily care, including religious and secular instruction.

Respondent, 25 years old at the time of trial, is employed as a draftsman by Federal Pacific Electric where he has worked for eight years. His salary is $528 per month gross; in addition, he received overtime pay of approximately $1,500 in 1973, which may

not repeat in subsequent years. Respondent's Exhibit 1, a financial statement and income-expense statement, was not submitted to us on appeal.

Though each party accused the other of fault in the marriage and questioned his or her suitability to care for this child, the record discloses both manifest a sincere interest in the child's well-being and proof of misconduct or unsuitability was insufficient to disqualify either as custodian.

Appellant's claims of respondent's excessive drinking and lack of attention to the health and other needs of the child during visitation periods are somewhat vague. She asserts his drinking frequently culminated in drunkenness which he admitted happened on several occasions. Nevertheless, this and evidence of other misconduct was insufficient to show respondent unsuitable as a parent and custodian. Similarly respondent's complaints against appellant as an overpossessive wife and mother, jealous of any activity on his part with other women or his friends, are insufficient to show her unsuited as custodian of the child. The evidence indicated respondent's parents and immediate family were more supportive and closely knit than appellant's; yet both homes are acceptable environments for the child.

The trial court awarded custody of the child to respondent finding "that the credible evidence showed that respondent was a much more stable person than petitioner." This brings us to the only substantial challenge to appellant's fitness as custodian; namely, respondent's allegation as to her mental and emotional condition. Respondent complained that appellant displayed fits of temper, sometimes shouting or screaming at the child, was depressed and cried on numerous occasions, especially in the final months of the marriage. Respondent's other witnesses testified appellant was possessive and jealous of her husband's actions toward other women and seemed to transfer her affections to the child. Appellant on the other hand testified that her mental and physical health was good and this was corroborated by her doctor and her mother.

Respondent stated his wife seemed tense, upset and nervous, but then conceded she was "more or less shy," admitting that the parties had arguments regarding money matters that got out of hand. He stated "They could have been settled easily but I guess, *we're* hardheaded." (Emphasis added). He acknowledged there was a failure of communication and he did not know how to reach his wife, which as he described "was probably my fault, I don't know." According to respondent, during this period appellant stated she wished she were dead, though this was the only instance in which she made such statement. It is significant that when prompted by leading questions of his attorney, suggesting that his wife's *mental health* was the reason he wanted custody of the child, respondent drew back from that position and stated "I really *can't say mental health*." (Emphasis added).

Respondent's allusions to appellant's so-called mental health problems were substantially refuted by subsequent professional testimony. In January, 1973, appellant quite understandably sought the marriage counseling service of Dr. Fritz Henn, psychiatrist at Barnes Hospital. During that initial visit he suggested the husband as well as the wife should come to see him. The doctor contacted respondent-husband but they could not agree on a time for an appointment and his office notes showed "the husband will not come in." Immediately thereafter the parties separated. Respondent conceded the appointment was not kept and that the subsequent separation and dissolution ended the effort.

Dr. Henn testified as to Sandra Zigler's condition, describing it as "situational distress" which he said was "in essence, [a] normal reaction to the stress situation" she was then experiencing. He further testified "She did not suffer, in my opinion, any depressive reaction of any kind at that point." The doctor and Sandra Zigler agreed that since the parties had separated,

there was no further need for consultation. In January, 1974, before the trial in April, he found she was "concerned about the court trial, feeling somewhat anxious of the circumstances surrounding this proceeding" and she "suffered from *no* psychiatric illness." (Emphasis supplied). The doctor saw Sandra again February 24, 1974, and found though she was concerned about the pending lawsuit, she was "under very good control," performing well at work and she required no medication. In the doctor's opinion "it would be fair to say Sandra at no time had professional need of a psychiatrist."

At the time of separation respondent testified he found certain pills in the medicine cabinet which he disposed of and would have us infer this establishes his wife's emotional instability. The evidence falls far short of so doing, as he did not know the nature of the "pills," their purpose, or anything as to their use. At the time the parties were enduring the most difficult period of marital discord (about one week before the separation when appellant first sought marriage counseling), Dr. Henn prescribed for her a temporary low dose sedative known as valium, but not more than ten pills. This was the only evidence of probative value on the subject.

On May 13, 1974, the trial court entered its decree dissolving the marriage and awarded custody of the child to respondent. On appellant's motion to vacate, reopen, correct, amend or modify, the court reopened the trial, permitting testimony of John Stuart, domestic relations worker of the Circuit Court of the County of St. Louis, relative to a child custody study which he had prepared pursuant to § 452.-390, RSMo 1973.

Stuart testified he interviewed appellant and respondent in his office, visited appellant's home where the child was residing, spoke briefly with the maternal grandparents, and he gathered information from Dr. Henn, psychiatrist, Dr. Eto, pediatrician, and Dr. Berdle, pediatrician. Stuart recommended that custody of the child should remain with the mother. His Evaluation and Recommendation to the court contains the following: "The child responds well in his present environment. The child and mother respond well to each other. Due to the child's age, need for maternal love at this time, it would be in the child's best interest to allow him to reside with his mother. The obvious need for father will become more prevalent in the future. Both parents should realize and work toward the goal of the child being with the father as much as possible."

He stated that a child of this age "is looking for a strong maternal response," that "[c]onsistency is a necessary component in an individual's life, particularly at this age, because they (children of this age) are learning to cope with certain life situations which will have ramifications in their personality the rest of their life . . . In terms of removing the child from this situation we are going to ask the child not only to deal with immediate loss of his mother, which at this point, would be somewhat traumatic, but to also deal with a new relationship . . . with his father." He points out that to change custody would require psychological compensation for loss of the mother. Stuart did not testify that children of this age should never be deprived of the mother, but that, "In this case, where we have a very consistent pattern with the mother, where there has been normal progress, there is love, security and nurturance, there is no history indicated to me to separate the child from the mother . . ."

Despite the testimony of John Stuart and Dr. Henn the court relied heavily on the testimony of lay witnesses as "to unstable conduct on the part of appellant." On July 5, 1974, the court re-entered its decree of May 13 granting custody of the child to respondent.

For her principal point on appeal appellant contends the trial court erred in granting custody to the father because the best

interests of the child required that custody be given to the mother and because there was insufficient credible evidence to find that the mother lacked emotional or mental stability to serve as a custodian. We are not unaware that one of the most difficult duties facing trial courts is that of custodial award of minor children, and while the judgment of the trial court should not be set aside unless erroneous, the record here requires reversal.

The facts presented no clear choice between a "good" and a "bad" parent; neither was guilty of serious moral impropriety, negligence, or child abuse; nevertheless, we perceive important distinctions. Having in mind the age of the minor child and the absence of special reasons for changing custody, we find the interests of this child would best be served by placing him with the mother; being mindful that ordinarily "a mother is deemed to be the one best able to care for a child of tender years." *S. G. E. v. R. L. J.*, 527 S.W.2d 698 (Mo.App.1975) (K.C.D. # 27516, p. 7); *Eissler v. Eissler*, 468 S.W.2d 217, 222[6] (Mo.App.1971). "This is not a presumption of law but a recognized fact of life based on human experience." *McCallister v. McCallister*, 455 S.W.2d 31, 34[2] (Mo.App.1970). "Any departures from that usual award of custody have been described by this court . . . as 'aberrations from normalcy.' . . . [W]here such variance occurs, 'there must be a finding, evidentially supported, that the best interests and welfare of the children are served by a departure from the normal pattern of family relationships.' " *S. G. E. v. R. L. J.*, supra; *Baker v. Baker*, 475 S.W.2d 130, 133[2] (Mo.App.1972). Such finding by the court below was not supported by the evidence.

Appellant-mother has been the primary caretaker and custodian of the child for all of his four and a half years, responsible for his health, personal and educational needs. She has had *sole* custody (except for brief visitation periods) during the two years and ten months since the separation. We consider it significant that respondent allowed her to retain custody of the child at the time of separation in January, 1973; consented to the *pendente lite* order, continuing custody with the mother in April, 1973; and at the commencement of trial on the merits consented to a child support award if custody were granted to the mother; and finally, respondent did not assist the court with an appellate brief articulating his position nor refuting appellant's contentions on the issues here.

Since the separation, appellant has maintained a proper home environment, supported and cared for the child, and has secured a suitable day-care arrangement for him. Further, appellant has made concrete plans for the child's continuing educational needs by enrolling him in a Montessori School in Kirkwood, as contrasted to respondent's efforts who admitted he had not investigated any nursery schools near his home.

We are impressed by the testimony of Dr. Henn concerning appellant and that of John Stuart, recommending custody remain with her which emphasized the value of maintaining consistency in the life of the child. We are satisfied that the charges as to appellant's emotional deficiency were short on proof, lacking in substance and adequately refuted.

Our reticence to reverse this judgment is outweighed by our heavy primary burden to determine custodial grants from the standpoint of what is best for the child. We find that the trial court erred in holding the best interests of the child would be served by granting custody to respondent.

In light of this determination, it is unnecessary to reach appellant's other points. The judgment is reversed and the cause remanded with directions for the court to enter a judgment awarding the general care, custody and control of the minor child to the appellant Sandra Zigler and further that the court enter a judgment that the respondent Terry Lee Zigler may have temporary custody of said minor child every other weekend from 9:30 a. m. on Saturday

to 7.30 p. m. the following Sunday, on alternative major holidays (including December 24 and December 31) from 9:30 a. m. to 7:30 p. m.; for two hours on Casey's birthday; every father's day; and for three weeks during the summer vacation period, on condition that the respondent Terry Lee Zigler give six weeks' advance written notice of his intention to exercise the right to temporary summer custody and indicating where the child will be during the period of such three week summer vacation. Respondent shall provide all transportation for custodial transfers and the appellant Sandra Lee Zigler shall have rights of reasonable visitation when the minor child is with the father Terry Lee Zigler during such three week summer vacation period.[1] The cause shall be open for further evidence on the issue of child support and the court shall make such orders for support as may be proper thereon.

WEIER, P. J. and DOWD, J., concur.

1. The visitation and temporary custody provisions set out here are patterned from those provided appellant in the trial court's order.