I_____, Plaintiff-Appellant,

v.

I_____, Defendant-Respondent.

No. 25667.

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Rehearing Denied July 6, 1972.

Paul E. Panek, Belton, for plaintiff-appellant.

Thayer, Gum, Ernst & Wickert, John E. Wickert, Belton, for defendant-respondent.

CROSS, Judge.

Plaintiff is the mother and defendant is the father of K—, a female child born of their legal union. Plaintiff was granted a divorce on June 23, 1970, but legal custody of the child, then four years of age, was awarded to defendant. Thereafter, on August 29, 1970, plaintiff filed a motion to modify the divorce decree by changing the child's custody from defendant father to herself as the child's mother. Upon hearing, the trial court found "that there has been no substantial change in the conditions, and the best interests of the child require that she remain with her father as presently set forth in the decree." On the basis of those findings, the motion was denied. Plaintiff has appealed.

Plaintiff contends here that the trial court erred in failing to find that she has proven substantial and material changes of circumstances requiring a change of the child's custody.

At the original (divorce) hearing plaintiff appeared in person and by her counsel. Defendant at that time was stationed at Fort Bragg under military orders in U. S. Army Service and appeared only by his counsel. As shown by a transcript of the divorce hearing (introduced in evidence at the subsequent hearing on the motion to modify the decree), plaintiff was the sole witness to testify in the original proceeding. After narrating alleged general indignities ascribed to defendant as grounds for di-

vorce, she testified, relative to the custody question, that the parties separated October 9th, 1967 after residing together as husband and wife for approximately a year; that at the time of the divorce hearing, the child was and had been, for the previous six months, residing with her father at Fort Bragg; and that although plaintiff had the child in her custody when she filed the petition for divorce on October 18, 1968, prior to the hearing, she voluntarily turned the cutody of the child over to defendant. Plaintiff further testified as follows:

"DIRECT EXAMINATION:

"Q  Now, with regards to the minor child, what are you asking the Court to award there, with regards to custody of the child?

A  I think she should stay with the father.

Q  Would you explain the reason that you are asking this?

A  Financially he's more capable of providing for her, and giving her a more stable environment.

Q  And he is providing a home that's stable?

A  Yes, he is."

\* \* \* \* \* \*

"Q  He has had the child since December?

A  Yes.

Q  And you are satisfied with the provisions and how he's taking care of the child; is that correct?

A  Yes, sir."

\* \* \* \* \* \*

"CROSS EXAMINATION:

"Q  \* \* \* Is it your opinion that the child is better off with her father?

A  Yes.

Q  Do you think that she would have better care and better facilities with her father.

A  Yes I do.

Q  And it's not merely because of the financial aspect then; you think that because of the surrounding facilities, that the child is better off with her father?

A  Yes, I do."

\* \* \* \* \* \*

"Q  Are you perfectly satisfied with the provisions that are made for the child; that have been made?

A  Yes, I am.

Q  Now, do you realize that this decision shouldn't be taken lightly by you; that this Court will not readily change the custody of the child once custody has been granted to a party; do you understand this?

A  I do."

\* \* \* \* \* \*

"THE COURT:

Q  What are the conditions under which the child is in your husband's custody; what are the living arrangements since he is in the Army?

A  They have a house— \* \* \* She and my husband. \* \* \* She attends nursery school during the day, and he takes care of her at night in the house."

"THE COURT: You are not giving up the custody of this child so that you can get a divorce from this man, are you?

A  No, sir.

THE COURT: You are not sacrificing the custody question so that he won't contest the divorce?

A  No, sir.

"THE COURT: No inducement involved in this custody situation except your feeling that he is the best person to have custody of this child?

A No, sir."

Evidence adduced at the hearing on plaintiff's motion to modify clearly delineates the conditions surrounding the parties both at the time of the original decree and subsequent thereto. It is shown by defendant's testimony that after the divorce was granted, he was discharged from the U. S. Army, in which he had served as a Chief Warrant officer, on flying status as an attack helicopter pilot for twelve months in Vietnam. Together with his child, he then moved to Pittsburg, Kansas, where he had attended college before enlisting in the U. S. Army. At the time of the modification hearing he had re-enrolled in the college at Pittsburg and had two semesters of work to complete in order to receive a degree in biology. Defendant was also enrolled in a Veterans Administration program in Joplin, Missouri, for training to qualify as a certificated single and multi-engine commercial air pilot. He was financing his schooling and flight training through the Veterans Administration Education Allowance, unemployment compensation, and additional income of approximately $200.00 per month received for his service in the Kansas National Guard as an air pilot. Upon completion of his college work and flight training he planned to fly commercially to support himself and his child.

Defendant and the child live in an attractive, carpeted mobile home near Pittsburg. The child has a room of her own and a yard in which to play. The home and premises are well kept. There are other families with children living nearby in mobile homes. The child is enrolled in school and attends regularly. Defendant describes her as a very happy, very healthy, very alert individual, with no problems of health or otherwise. She gets along well with other children in the neighborhood and attends church and Sunday School regularly. When defendant is attending college classes and his aviation course, his child is cared for by his sister, Mrs. A——, age twenty-four, who lives with her husband and three year old child in Pittsburg. Ordinarily Mrs. A—— cares for the child between 3:00 P.M. until 6:30 P.M., at which time defendant picks her up and returns home with her. Mrs. A—— testified that the child was growing "just beautifully" that her hair was always combed, that her father dresses her "just beautifully", that she is perfectly happy and well adjusted, and that among other children she is "the leader". The minister of the church attended by defendant and his child testified that defendant maintained "a very impressive home situation", and that K—— was a happy, normal, well adjusted child.

It appears from the testimony of both parties that by October of 1967 the parties had become estranged. At that time, plaintiff stopped having sexual relations with defendant. She admits she had "absolutely no relationship with him after that date." In August of 1968 she entered into a sexual relationship with one Major C., who at that time was also married. Plaintiff and her paramour continued having sexual relations up to the time both of them obtained divorces. The described liaison resulted in plaintiff's pregnancy and she gave birth to a daughter in Richmond, Virginia, on May 7, 1969, at which time she was still legally married to defendant. The child's birth certificate recites her surname as that of her biological father, Major C. Plaintiff admitted that defendant, who had no "access" after October of 1967, "couldn't physically be the father of this child in Virginia." (Hereinafter this child will be referred to as child C—.) On July 29, 1969, (36 days after she was granted a divorce) and at Keflavah, Iceland, plaintiff was married to Major C., who by that time had obtained a divorce in Texas.

Plaintiff's "household" (as of November 10, 1970, the date her custody motion was heard) consists of herself, her husband

(Major C.) and their daughter C—. The family lives on an air force base in Virginia in a "large" house furnished by the government. As advantages the child K— would enjoy, if a member of her present family group, plaintiff testified: "We have a three bedroom house, base housing. It's large; it's three bedroom, two baths; it's all government, with all the utilities and appliances furnished. We have got a large backyard; it's two miles from the main base where the hospital and dental clinic and Commissary and P.X., naturally which we use, are located. * * * I'm home all the time, living in the house. She would be eligible for military benefits, the hospital, some free dental care such as check-ups and fluoridation; the school is just two blocks from our house; it's an accredited school operated by the York County School System in Virginia. Our house is large; it's in a nice neighborhood; it's patrolled at all times by the military police; there are children her age living out there. There is a lot of love, and she would have a full time mother, and supervision of a man also." Asked to describe where defendant and the child were living, plaintiff stated she could do so because she "used to live in it". She referred to it as a "two bedroom trailer",—a nice little trailer. She has no personal knowledge otherwise as to what "their living conditions are in Pittsburg, Kansas." Again referring to her new home with Major C., she commented, "The house that we have to offer is much larger and I would be home all the time with (the child). She wouldn't have to be left with baby sitters ever." Upon examination by the court, plaintiff admitted that she had sworn falsely in her affidavit in support of her petition for divorce.

Called as a witness for plaintiff, Major C. identified himself as a career air force officer, not currently on flying status, with base pay of $1,054.00 per month. He had four children by his previous marriage for whom he pays $400.00 child support monthly. He admitted having sexual relations with plaintiff "from after the time you met her until she and you both obtained your divorces." He acknowledged that the child C— was his child, conceived while plaintiff was married to defendant. He stated he would be "receptive" to having the child K— placed in his home.

█ It is a thoroughly settled rule of law that an order as to child custody is as conclusive as any other judicial decree, and may be disturbed only upon convincing proof that there has been a substantial, material change of conditions since the previous order of the court, *coupled with* a showing that modification of the order would promote the best interests of the child or children involved. The burden of such proof is upon the party seeking a change of custody. Mo.Digest, Divorce, ☞303(2). In our opinion plaintiff has not borne her burden of proof in either respect. The fitness of defendant as a custodian of his child was thoroughly established at the original hearing by plaintiff's testimony that he was providing the child a suitable home and a stable environment and was giving her proper and adequate care. The resulting decree gave rise to a rebuttable presumption of defendant's continuing fitness as the child's custodian. No evidence to the contrary was produced at the hearing on this motion. In fact, the evidence at that proceeding has confirmed the trial court's original view that defendant is a suitable and fit person to have the child's custody, that he has sufficient and adequate facilities for that responsibility, and that he has given her proper care. The evidence was abundant that the child was happy, healthy and well adjusted.

█ The only change of conditions worthy of note is that plaintiff was remarried. It is universally held that remarriage of one, or both of the parents, is not in itself a controlling consideration of sufficient reason for changing custody of a child. See Kennedy v. Carman, Mo.App., 471 S.W.2d 275, and cases cited. In the case of Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, there were changed condi-

tions in that plaintiff wife had remarried; that she and her then present husband had acquired a comfortable five room bungalow; and that she had terminated her employment and was in a position to devote her full time to her home and children. The court held such changed conditions were not enough to warrant a change of custody, because it must also be shown that the welfare of the child affected demanded a change of custody. Plaintiff argues that, by reason of her remarriage, facilities beneficial to the child's interests have become available, in that plaintiff is able to provide a "much larger" home than defendant's modest mobile home, and the child would be eligible to share the generous military benefits available to Major C.'s family if she became a member of that household. We are not impressed by those suggested considerations. The size or opulence of the dwelling place provided for the child is a factor of minor significance. It is sufficient that defendant maintains for her an abode that adequately satisfies the needs for her proper care, keep, guidance, education and development—absent a showing that the child's best interest requires her placement otherwise. Furthermore, it does not appear that the child lacks any of the essential services being received by Major C.'s family from the government as fringe benefits. .

Plaintiff's main argument for the custody change sought is that her remarriage has made it possible for her to be "home all the time" with the child and give her the care of a natural mother. So contending, she directs our attention to cases holding that when parents vie for custody of a child of tender years, and if all else be equal, the child should be given into the mother's custody. We are familiar with that rule, as well as numerous others which have guided the courts in resolving the many contests that have arisen over child custody. As the court said in M_ L_ v. M_ R_, Mo.App., 407 S.W.2d 600, "(A) profusion of cases convincingly demonstrates that the courts are not reluctant to entrust chil-

dren into their father's care and custody, where the best interests of the children will be served thereby * * * (citing cases). The only rigid, inflexible and unyielding principle in custody cases is that the welfare of the child is paramount and supreme * * *. (P)erplexing problems of custody must be resolved not by applying academic rules or by mouthing pious platitudes but rather by determining, insofar as is humanly possible, what will best serve and promote the child's welfare."

We are not persuaded that the child's best interest and welfare would be benefited by the "full time" care plaintiff belatedly offers to give. Plaintiff by her own testimony has clearly delineated herself to be a person deficient of moral sense and rectitude. We can visualize no greater breach of basic morality than to bear a child, during marriage, that was conceived in illicit sexual union by a father other than the lawful husband. That breach was compounded by plaintiff's concealment of the child's birth from her own lawyer and from the court which granted her a divorce. Plaintiff's moral dereliction is further demonstrated by her admittedly false affidavit made in support of her divorce petition, in which she perjured herself by swearing that she had faithfully demeaned herself as defendant's wife. Such an admission of false swearing reflects on plaintiff's fitness to have the child's custody. S_ v. G_, Mo. App., 298 S.W.2d 67. Shepard v. Shepard, Mo.App., 194 S.W.2d 319. It is also a fundamental verity that "(T)he morals of the respective parents properly become the subject of inquiry as an important factor to be considered in determination of the motion to modify." Hurley v. Hurley, Mo. App., 284 S.W.2d 72. The result of our inquiry into plaintiff's morals leads us to believe that it would be an ill-conceived experiment to entrust the child into the "full time" care of plaintiff. "The court should not indulge in experiments with so important a trust, especially where the child is in a home where it receives good treatment and moral training." Birrittieri v. Swan-

ston, Mo.App., 311 S.W.2d 364. Furthermore, we are not convinced that the child's needs would be better served in the household of Major C. than in her father's home. If custody of the child were so changed, instead of being under the authority of her blood father who has proven his suitability for its exercise, she would be living in a home presided over by a stepfather concerning whom we know very little except what is narrated above. Being in agreement with the trial court, we adopt as our own its findings that "there has been no substantial change in conditions and the best interests of the child require that she remain with her father as presently set forth in the decree." Consequently, we will not disturb the judgment.

■ Plaintiff makes the rather startling assertion in her brief that "it was in the Court's knowledge, that the custody of the minor daughter was only obtained by the respondent through fear, fraud, and coercion in the first place and therefore, the judgment of the Circuit Court was so contrary to the Law that the appellant was denied due process of Law contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Missouri Constitution as Amended." The only evidence to support that charge came from plaintiff herself. She testified that "she gave up" K—'s custody at the original hearing only because defendant had threatened that if she did not consent that he have custody of the child, he would try to take "both children." The foregoing was flatly denied by defendant. Deferring to the trial court who saw and heard the witnesses, we resolve this matter of credibility in favor of defendant and hold that plaintiff has failed to substantiate her charge of "fraud, fear and coercion". The only fraud in this controversy disclosed by the record was perpetrated by plaintiff. We refer to her obtention of a divorce decree under a false affidavit and false testimony, representing that she had faithfully demeaned herself as defendant's wife; also her concealment, from the court, of any

knowledge that a second child had been born during the subject marriage.

The judgment is affirmed.

SHANGLER, C. J., concurs.

DIXON, J., not participating.

PRITCHARD, SWOFFORD, and. WASSERSTROM, JJ., not participating because not members of Court at time cause was submitted.