Anne Doris DUNCAN (Crookshanks), Petitioner-Respondent,

v.

James Quentin DUNCAN, Respondent-Appellant.

No. KCD 27846.

Missouri Court of Appeals, Kansas City District.

Oct. 6, 1975.

Charles W. Spooner, North Kansas City, for respondent-appellant.

Jon M. Krebbs, Kansas City, for petitioner-respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment in modification of decree of divorce and custody of minor children.

A divorce action between these parties resulted in a decree of divorce to James Quentin Duncan May 17, 1968. Custody of their minor children, Angela Anne Duncan, age four years, and Troy Quentin Duncan, age two years, was awarded to James Quentin Duncan. Anne Doris Duncan was awarded temporary custody of the children for one weekend each month and two weeks during the summer months with right of visitation at reasonable times and for reasonable lengths of time.

On July 19, 1974, Anne Doris Duncan Crookshanks filed her Motion to Modify Decree of Divorce As To Custody, praying that she be granted the care and custody of the children, now 10 and 8 years of age, alleging:

"That since the rendering of the divorce decree there has been a change of conditions between the parties sufficient to warrant the modification of the divorce decree, to-wit:

"A. The defendant-respondent is possessed with a violent temper and has disciplined the children harshly on numerous occasions.

"B. The defendant-respondent has continually shown partiality towards Angela thereby causing fear, resentment and distrust in Troy which has manifested itself in an extreme nervous condition.

"C. The defendant-respondent refuses to allow visitation by plaintiff-petitioner except for one weekend a month and refused to allow plaintiff-petitioner to have temporary custody of the children for two weeks in the summer during 1968, 1969, 1970, 1971 and 1972.

"D. That the defendant-respondent constantly attempts to turn the children against plaintiff-petitioner and has told the children that if they live with plaintiff-petitioner they will never see him again.

"E. That the children have often requested to live with plaintiff-petitioner and have exhibited reluctance and anxiety on being returned to defendant-respondent.
* * *

"That since the granting of the divorce the plaintiff-petitioner has remarried, that she can provide an adequate home for the raising of two minor children, that she is not now employed and therefore can be present in the home at all times, that her present husband has stable employment and is providing a suitable home for the plaintiff-petitioner."

Trial was accorded on the motion November 27, 1974. Mrs. Crookshanks and her husband as of December 15, 1972, Larry A. Crookshanks, testified in support of her motion. James Quentin Duncan and his wife as of June 26, 1968, Karen Rinehart Duncan, testified in opposition to the motion. Also in evidence by agreement of the parties were two reports, each styled "Court Study," purporting to be a social summary covering the parties, their children, and their homes, prepared by a social service worker in the Platte County Division of Family Services. (See Section 452.390, Laws 1973, effective January 1, 1974.)

During the testimony of Mrs. Crookshanks, an objection was sustained against her stating what Angela may have told her with respect to where she preferred to stay. Counsel for Mr. Duncan observed, "[t]he children are available here today for the Court's examination"; counsel for Mrs. Crookshanks observed, "[t]he children are here, and I'm sure they can be cross-examined"; and the court stated, "I'll talk to the children myself after while if I have permission from both of you to do it." Both counsel responded, "Yes, sir."

Prior to resting movant's case, her counsel asked the court "to meet with the children and discuss these matters * * * in front of the court reporter, in order for the court to elicit from them the same reasons that they wish to live with Mr. and Mrs. Crookshanks, as they have indicated to Mr. and Mrs. Crookshanks." The court responded, "I'll talk to the two children, but I will not talk to the two children with the court reporter present. If I talk to the two children it's going to be between the two children and myself, and individually, not

together. So, we'll take a recess, and let me talk to the little girl first, and then I'll talk to the boy"; whereupon, the court went in recess after which it reconvened for the case in defense of the motion.

The judgment from which this appeal was taken was entered January 15, 1975: "* * * the original order of divorce is modified in that the care, custody and control of Angela Anne Duncan and Troy Quentin Duncan is granted to the Mother, Anne Doris Duncan (Crookshanks), with reasonable rights of visitation to the Respondent Father, James Quentin Duncan, said reasonable visitation shall include that James Quentin Duncan shall have the children on alternate weekends from Friday at 6 P.M. until Sunday evening at 6 P.M., and shall have custody and control of the children for a two week period during vacation months * * *."

Section 452.410, Laws 1973, effective January 1, 1974, provides: "The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

Consistent with the foregoing statute, appellant contends (I) and (II) that the evidence of change of circumstances and whether modification is in the best interests of the children is not sufficient as a basis for the court to modify its prior custody decree.

■ Dispositive of this appeal, however, is appellant's contention (III) that the court erred in conducting nonrecord interviews in chambers with the children without presence of counsel, and in considering the product of such interviews as evidence on the issues in the case.

Section 452.385, Laws 1973, effective January 1, 1974, provides: "The court may interview the child in chambers to ascertain

the child's wishes as to his custodian and relevant matters within his knowledge. The court shall permit counsel to be present at the interview and to participate therein. The court shall cause a record of the interview to be made and to be made part of the record in the case."

It is clear on the record that the court exercised the discretion accorded by Section 452.385, supra, and interviewed the children in chambers. It is clear also that the court did not cause a record of the interview to be made and to make it a part of the record in this case. Insofar as the record shows, neither did the court accord permission to counsel to be present and to participate in the interview.

The foregoing circumstances demonstrate that the clear and unambiguous provisions of Section 452.385, supra, were violated, and such violation was error in this case.

Any consideration given by the court to the children's unrecorded testimony would be improper because it would not be supported by the record. The failure to preserve testimony elicited from the children under the circumstances precludes meaningful review with respect to whether their testimony may have furnished the court the basis, in whole or in part, for the indispensable finding under Section 452.410, supra, that a change has occurred in the circumstances of the children or their custodian and that modification of the prior custody decree is necessary to serve their best interests. For a similar situation, see *Roper v. Roper*, 461 S.W.2d 330 (Mo.App.1970), where the trial court erred because it was apparently actuated in its modification of a custody decree by facts that did not appear in the record but probably were ascertained in off-record interviews between judge and child; and because of the incomplete record, the appellate court on review was unable to enter a judgment concluding the case as authorized by Rule 73.01, V.A.M.R. Cf. *Lipsey v. Lipsey*, 464 S.W.2d 529, 534[8] (Mo.App.1971), where failure to record an in-chambers interview with the children in a custody proceeding was excused as harmless error in the circumstances; but note that the law then in force, Chapter 452, RSMo 1969, did not mandate a record of any such interview.

In summary, under Missouri's Dissolution of Marriage Code, Sections 452.300 to 452.415, Laws 1973, effective January 1, 1974, and particularly Section 452.385, supra: If the court elects to interview a child in chambers to ascertain his wishes as to his custodian and relevant matters within his knowledge, the court must follow the mandate of the statute and permit counsel to be present and to participate, and cause a record to be made and to be made a part of the record of the case; if the court makes no such election, then the statute has no application.

Judgment reversed and cause remanded.

All concur.