Ingrid M. ADAMS (now
Dillon), Respondent,

v.

William S. ADAMS, Appellant.

No. 17124.

Missouri Court of Appeals,
Southern District,
Division One.

July 18, 1991.

Lawrence E. Ray, St. Robert, for respondent.

James L. Thomas, James L. Thomas &
Associates, Waynesville, for appellant.

MAUS, Presiding Judge.

A decree of dissolution awarded the primary care and custody of two children to appellant William S. Adams, their father. The respondent, Ingrid M. Adams (now Dil-

lon), their mother, was granted reasonable visitation. The appellant, a Chief Warrant Officer, received an order assigning him to a tour of duty in Germany. He filed a motion to modify including permission to take the children with him to Germany. The respondent filed a motion seeking custody of the two children. The trial court denied the appellant's motion. It modified the previous decree and awarded primary custody to the mother and granted the father weekend and designated holiday visitation and temporary custody for 60 days each summer. The father appeals.

An outline of the historical background of the case and the record before this Court is necessary to demonstrate why the judgment must be reversed and the case remanded. The parties separated May 27, 1988. The decree of dissolution was entered on June 29, 1988, upon the petition of the mother. At that time she lived in Crocker, Missouri, and worked at McDonald's in St. Robert. The father was a Chief Warrant Officer stationed at Ft. Leonard Wood. He lived at that post. Their son, David Stephen Adams, born April 26, 1978, and their daughter, Jennifer Jean Adams, born September 10, 1980, lived with their father.

The mother was unable to be personally present at the hearing upon the petition, but appeared by counsel. She was in Germany as the result of a death in her family. The father appeared pro se. He was called as a witness by the mother's counsel. His testimony established the basis for the decree of dissolution. His testimony, elicited by the mother's lawyer (not present counsel), included the following questions and answers.

"Q. And you and your wife have agreed to everything that we're doing today; is that correct?

A. Yes, sir, we have."

\* \* \* \* \* \*

"Q. And are you requesting that the primary care and custody of the minor children be awarded to yourself?

A. That is correct.

Q. And you've talked this over with your wife and she's agreeable to that; is that correct?

A. Yes, she is.

Q. And are you requesting that this Court grant reasonable visitation privileges to see and visit with the minor children and to have the minor children see and visit her on any and all reasonable occasions as long as she gives you reasonable notice; is that correct?

A. That's correct."

\* \* \* \* \* \*

"Q. Basically, are you asking the Court to allow you to remove the children from this state and go to another post or go overseas—

A. Basically.

Q. —without having to come back into court? Now, you've talked this over with your wife, and she's agreed to this; is that correct?

A. That is correct.

Q. And it's your understanding she's talked to me and that's agreeable also; is that correct?

A. Yes, sir."

As stated, the decree of dissolution awarded the primary care and custody of the children to the father and granted reasonable visitation to the mother. The decree also contained the following provision.

"4. That both parties are allowed to remove the minor children from the State of Missouri and/or the United States of America without further permission or order of this Court."

As a result of a subsequent modification, the efficacy of this provision, in the light of §§ 452.377 and 452.411, need not be considered.

The mother's first motion to modify and father's cross-motion to modify were heard on July 26, 1989. Those motions are not a part of the record. On September 25, 1989, the court entered a judgment disposing of those motions. That judgment of modification provided the father should continue to have primary custody of the children. It awarded the mother specific visitation on the first and third weekends and designat-

ed holidays and granted her temporary custody for 30 days beginning each July 1. The judgment of modification also contained the following provision.

"2. Defendant [father] is not permitted to remove the children from the State of Missouri for a period exceeding ninety days pursuant to Section 452.377 RSMo (1986);".

On September 27, 1989, the father filed a motion to modify the decree entered two days earlier. That motion alleged the father had, on September 25, 1989, been ordered to report on January 10, 1990, for a tour of duty in Germany. The father prayed that he be allowed to remove the minor children from Missouri and that mother be granted temporary custody for 45 days in the summer and for the Christmas holiday, with the parties to divide the cost of transportation.

The mother, on November 30, 1989, filed a cross-motion to modify. As the basis for modification, she alleged:

"10. That since the time of said original decree and for [sic] Judgment of Modification a substantial and continuing change in circumstances has developed requiring that a modification be made in that Defendant has received a military assignment to West Germany and intends to frustrate the custody, visitation rights and parental contact of the children and Plaintiff."

The mother prayed for custody of the children and child support, with the father to have temporary custody for 30 days each summer and six days at each Christmas, the father to pay travel expenses. Those motions were heard on December 18, 1989. The trial court took the matter under advisement until the next morning.

The children briefly testified on the record on December 18, 1989. Prior to their appearance, counsel for the mother said:

"Your Honor, we join in asking that you interview the children. However, I want—might want to ask them some questions, also."

The court responded:

"I'm not going to let you. You can form a list. We'll take about a five-minute recess, and you can write down any questions you want to request me to ask, but that doesn't mean I'm going to ask them."

The court subsequently said:

"Well, the last time we had a hearing on this matter, which I think was in July of 1989, both of the children talked to me separately and together; and I think they're both extremely articulate...."

The children then briefly testified by responding to questions by the court concerning their preference. They expressed love for both parents. David's testimony included the following:

"Q. Now, what do you want to do?

A. Well, I'm going to have to stay with one or another. So—Well, I'll try to get the easiest way. So—well—

Q. That's a hard decision, isn't it?

A. Yes.

Q. Because you love them both; don't you?

A. Uh-huh."

Jennifer's testimony included the following:

"Q. ... What are your feelings about going to Germany?

A. Well, I would enjoy going to Germany.

Q. You would? Is that your preference? Would you rather go to Germany?

A. Yeah—In a way, yes."

The mother's testimony included the following:

"Q. Did the children ever tell you that they wanted to stay with their father?

A. They have at times."

The trial court on the morning of December 19, 1989, again talked with the children. There is no record of that conversation. In an extensive dialogue with the parties and counsel, the trial court announced:

\* \* \* \* \* \*

"I am going to give temporary custody of both children to the natural mother until June of 1990. I've discussed this with the children in the presence of their

attorneys. This is going to be a temporary order. Mr. Adams will have visitation rights in the summertime after school is out. Then I'm going to set a hearing when he can make it back to pick up the children for visitation rights. I'm going to let you present any evidence you may, but I want to see and hear and talk to the children again."

\*    \*    \*    \*    \*    \*

Subsequently, in the dialogue, the court explained:

"The kids—I'll tell you what they told me in chambers. And I'll tell Mr. and Mrs. Adams, and we shouldn't do that. The lawyers shouldn't even tell you. They want to go with you, Mr. Adams; they want to stay with their mother. They're flighty, see? And I—And this is my suggestion that they have not had a period of time to be with the mother as an actual parent. It's just been visitation. And they reluctantly agreed—and I say this reluctantly—that they would give my plan an opportunity to work."

The trial court thereupon signed a handwritten "Memorandum of Judgment of Modification" containing temporary orders. Those "temporary orders" awarded primary physical custody of the two children to the mother and awarded her child support of $200 per month per child. The temporary orders concluded with the following. "The Court shall reconvene court and hear evidence in June, 1990."

The father then filed a Petition for a Writ of Prohibition in this Court attacking the temporary orders. He asserted, among other things, the temporary orders were invalid because there was no motion for a temporary order and such temporary orders prevented an appellate review. He prayed that those orders *and* the judgment of September 25, 1989, be vacated. The petition was denied.

The father had also filed a notice of appeal to this Court. The mother filed a motion to dismiss that appeal because the

temporary orders were not a final judgment[1]. That appeal was dismissed when the father did not file the record.

▮▮▮  The father has attached a copy of the temporary orders, as well as the judgment of July 31, 1990, to his notice of appeal. It is by this Court determined that the temporary orders have expired by their own terms. However, nothing in this opinion should be construed as approving such orders. Section 452.380.1 provides:

"A party to a custody proceeding may move for a temporary custody order. The motion must be supported by an affidavit. The court may award temporary custody after a rehearing or, if there is no objection, solely on the basis of the affidavits."

By its terms, this section is applicable to a motion to modify a decree of custody, although its application to such proceedings has been adroitly limited.

"We do not hold nor imply that pendente lite motions for temporary custody and visitation are proper during the pendency of a motion to modify previously adjudicated custody. Sec. 452.380 RSMo.1986, provides that a 'party to a custody proceeding may move for a temporary custody order.' The usual province of a pendente lite proceeding in a dissolution action is to adjudicate custody on a temporary basis pending final adjudication because no judicial determination of proper custody has been made. See Sec. 452.-310.3 RsMo.1986. Here we have a decree establishing custody entered in the dissolution action. The proper challenge to that decree is a motion to modify. Ordinarily the use of a pendente lite motion to establish temporary visitation and custody during a modification proceeding does not promote judicial efficiency nor resolve an undetermined custody of the child." *Muegler v. Muegler*, 784 S.W.2d 839, 840, n. 1 (Mo.App.1990).

The language of the statute makes it clear an order of temporary custody is ancillary

---

1. Those interested in the appealability of an order of custody pendente lite may see *Hermelin v. Hermelin*, 766 S.W.2d 670 (Mo.App.1989); *Saeuberlich v. Saeuberlich*, 782 S.W.2d 78 (Mo. App.1989); *Cernuto v. Cernuto*, 779 S.W.2d 251 (Mo.App.1989); *Houttuin v. Houttuin*, 780 S.W.2d 711 (Mo.App.1989); *Tzinberg v. Tzinberg*, 631 S.W.2d 681 (Mo.App.1982).

to a principal or underlying proceeding. Temporary orders of custody should be limited to "custody pending litigation." Such orders cannot provide a vehicle for courts to acquire perpetual jurisdiction.

The temporary orders were improvident. They were not based upon a motion for custody pendente lite. By those orders the trial court modified the prior decree of custody, apparently upon a trial basis, and sought to retain continuing jurisdiction over the children and the parents.

> "A motion to modify a prior custody decree is in the nature of an independent proceeding and the motion is treated as a petition in an independent proceeding. *Mahan v. Mahan*, 239 Mo.App. 317, 319, 192 S.W.2d 626, 627[2] (1946)." *Ex parte J.A.P.*, 546 S.W.2d 806, 808 (Mo.App. 1977).

An independent proceeding to modify a prior decree of custody should be concluded with a final judgment. *Dorris v. Dorris*, 623 S.W.2d 47 (Mo.App.1981).

The record contains the judgment dated July 31, 1990. That judgment recites:

> "... Plaintiff appears in person and by her attorney Lawrence E. Ray; Defendant appears in person and by his attorney James Thomas; Parties announce ready for final hearing and trial.
>
> Upon this matter being submitted to the court, and after considering the evidence on both hearing dates...."

However, the transcript filed with this Court includes only the testimony upon the decree of dissolution heard by Judge Tracy L. Storie and the modification hearing of December 18 and 19, 1989 before Judge Arthur B. Cohn.

The father delayed in ordering, through the circuit clerk, the transcript from the Central Transcription Service. When it was received, counsel for the mother was unavailable to approve the same. On January 17, 1991, the two judges involved signed the following order.

> "IT IS HEREBY ORDERED THAT Defendant–Appellant's Motion for Approval of Transcript on Appeal be granted."

On January 18, 1991, the father filed that transcript *and* his brief.

On April 8, 1991, the mother filed a motion in this Court which alleged

> "7. After reviewing the legal file and transcript on Appeal transcribed by the Office of State Courts Administrator, it has become known to Respondent that the hearing held on June 8, 1990, which later resulted in the Judgment dated July 1990, which Appellant has submitted as part of the Legal File and upon which Appellant's Appeal is based, is not transcribed and not part of the incomplete record on Appeal."

That motion prayed this Court to order the transcription of the hearing of June 8, 1990. The motion was denied. The mother's brief was filed two months after the brief was due.

The father's point on appeal is "there was no showing of a substantial change in circumstances other than [father] receiving military orders to relocate, and that there was no showing that such modification would serve the best interests of the child." By that point, he raises an issue of the sufficiency of the evidence to establish a basis for the judgment of modification. The evidence focused upon the father's proposal the children move with him to Germany and the effect of such a move on the mother's visitation. There is a paucity of evidence concerning the circumstances of the children during the more than 18 months they had been in the custody of the father. There was no testimony concerning their home life, activities and bonding with him. There was no evidence concerning their contact with the mother or their activities and bonding with her. The limited scope of the evidence demonstrates the position of the parties. It is the mother's position that if the father is granted permission to take the children to Germany her right of visitation will be impaired. Therefore, she concludes, the decree was properly modified to grant her primary custody. As the proposed move was the only change in circumstances pled and shown in evidence since the modification decree of September 25, 1989, the judgment of modi-

fication rests on that basis. It is the father's position this is not sufficient.

■ It is axiomatic that the move of a custodial parent to a location distant from the noncustodial parent is a change of circumstances within the meaning of § 452.-410. This is reflected in the statutory limitation found in §§ 452.377 and 452.411.

"The best interests of the child are best served by continued interrelationships with both parents. *Perr v. Perr*, 205 S.W.2d 909, 912[4] (Mo.App.1947). It is that general premise that engendered the judicial policy to deny the removal of the child to another jurisdiction where the practical consequence was to deny the child reasonable occasion for contact with the other parent. *Pelts v. Pelts*, 425 S.W.2d 269, 270[1–3] (Mo.App.1968)." *Samuels v. Samuels*, 713 S.W.2d 865, 868 (Mo.App.1986).

However, it is clear that such a move does not per se establish that modification is proper. See Annot., "Propriety of Awarding Custody of Child to Parent Residing or Intending to Reside in Foreign Country", 20 A.L.R.4th 677 (1983); A.M. Haralambie, Handling Child Custody Cases, § 7.08 Relocation of Custodial Parent, pp. 83, 84 (1983). That doctrine is recognized in this state.

"Jurisdictional problems and visitation privileges of a noncustodial parent are not insuperable obstacles when removal of a minor child to another state is at issue. *Hart v. Hart*, 539 S.W.2d 679 (Mo.App.1976); *Good v. Good*, 384 S.W.2d 98 (Mo.App.1965); and *Baer v. Baer*, 51 S.W.2d 873 (Mo.App.1932). In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child." *In re Marriage of Bard*, 603 S.W.2d 108, 109 (Mo.App.1980).

Also see *In re Marriage of Greene*, 711 S.W.2d 557 (Mo.App.1986).

■ Even though a relocation may be considered a change in circumstance within the meaning of § 452.410, that is just one prerequisite for modification. That section, in part, provides:

"Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian *and that the modification is necessary to serve the best interests of the child.*" (Emphasis added.)

The parent seeking modification bears the burden of establishing both prerequisites. *In re Marriage of Dusing*, 654 S.W.2d 938 (Mo.App.1983).

■ Whether or not the second prerequisite has been met depends upon a multitude of factors. It is impossible to list those factors. It is equally futile to attempt to assign the weight to be accorded any factor. It is fundamental that the modification of custody may involve a perspective different from that at the initial award of custody. *In re Marriage of Carter*, 794 S.W.2d 321 (Mo.App.1990).

Factors particularly relevant to modification of custody include the following. The extent of a child's attachment to its existing surroundings, including community, relatives and friends. His life with the custodial parent and the resulting degree of bonding between the two. The extent of the association of the noncustodial parent and the child and the degree of bonding between those two. Also, the circumstances which the child will encounter in a new home. It is in evaluating these factors the sentiments expressed by a child have great significance. See *In re Marriage of Carter*, supra.

■ As stated, there was but scant evidence concerning any of those factors. Neither party has developed the sketchy evidence in a statement of facts in their brief. To review this judgment affecting two children, this court has seined the record for evidence of relevant factors.

The following is a distillate of that evidence.

The mother is a native of Germany. The parties were married on October 4, 1977 at Bad Tolz, West Germany, while the father was on a tour of duty in that country. The mother has relatives in West Germany. David was born in that country. The couple and the children lived in West Germany from 1983 to 1986 during the father's second tour of duty in that country. Their living conditions, including housing, schools and medical facilities were satisfactory. The children are fluent in German.

At the time of the hearing on December 18, 1989, the children had been in the father's custody for more than 18 months. The father's duty is to fly VIPs. He had remarried. His present wife is a Captain in the U.S. Army. She had been transferred to serve a tour of duty in West Germany with the father. The record does not reveal if she is a native of West Germany, but she has relatives in the vicinity of Stuttgart where they are to be stationed. They have arrangements for the care of the children in the event they are required to be on duty at the same time. The father's new wife did not testify. The children said she was nice.

At the time of the hearing, the mother was employed as a paralegal by her attorney. She had married an engineer with the U.S. Geologic Survey. He had no children. The couple lived and will continue to live in his house in Rolla. The mother was pregnant. The new husband testified he got along well with the children and that he loved them.

The decree of July 26, 1989, continued the children in the primary custody of the father.

> "The resulting decree gave rise to a rebuttable presumption of defendant's continuing fitness as the child's custodian...." *I____ v. I____,* 482 S.W.2d 523, 527 (Mo.App.1972).

The only change of circumstances shown by the evidence was the assignment of the father to a tour of duty in Germany. This possibility was accepted by the mother when she asked that the children be placed in the custody of the father. The children were not to reside in a strange land. They had lived under similar circumstances in Germany for three years. They were familiar with the housing, educational and medical facilities. They were aware of the social conditions they would encounter. They were fluent in the language. They had relatives living in West Germany. Their testimony on the record has been noted. The comment of the trial court that they reluctantly agreed to give his plan an opportunity to work was an indication the children preferred to move to West Germany.

As stated, it was the burden of the mother to establish both prerequisites to a modification of the prior decree of custody. *King v. King,* 793 S.W.2d 200 (Mo.App. 1990). The sparse evidence supports the father's contention there was no evidence to support the second prerequisite.

"... Unless justice otherwise requires, the court shall dispose finally of the case...." Rule 84.14. To do so, this Court must determine whether or not the modification order was in the best interests of the children. However, the obligation of this Court to finally dispose of the case, presupposes an adequate record. *In re Marriage of Parker,* 762 S.W.2d 506 (Mo. App.1988). This presupposition is of particular importance when the issue is the custody of children. The limited nature of the evidence presented on December 18, 1989 has been noted. There is no transcript of the evidence apparently produced at the hearing on June 8, 1990. It was the duty of the father to file the record with the Court. Rule 81.12(c); *Farmers and Merchants Ins. Co. v. Cologna,* 736 S.W.2d 559 (Mo.App.1987). The father did order "the transcript". Apparently inadvertently, the Central Transcription Service was not aware of the fact the transcript should include the hearing of June 8, 1990. The two judges did approve "the transcript". It is not the province of this Court to order that transcript prepared, as requested by the mother. She was authorized to obtain and file such additional parts of the record as she considered necessary. Rule 81.12(c).

In all events, there is an incomplete record before this Court. *Robinson v. May Dept. Stores Co.,* 723 S.W.2d 603 (Mo.App.1987). The difficulty in finally disposing of the case is exacerbated by the inordinate delay in presenting the issue of custody to this Court. Much time has elapsed since the hearing of December 18, 1989.

Finally, the disposition to be made of this appeal is mandated by the restrictive manner in which the trial court conducted the interview of the children on the record and by its off-the-record discussions with those children. The unequivocal condemnation of this practice has been summarized:

"Once the court determines the child should be interviewed, the presence and participation of counsel and the making of a record become obligatory. Cases construing the statute have consistently held that failure to comply with the mandatory provisions thereof requires reversal. 'The lack of a record of the interview of the children alone requires us to reverse and remand the judgment as to visitation rights.' *Geary v. Geary,* 697 S.W.2d 318, 320 (Mo.App.1985). Violation of the statutory requirements necessitates reversal because '[a]ny consideration given by the court to the children's unrecorded testimony would be improper because it would not be supported by the record.' *Duncan v. Duncan,* 528 S.W.2d 806, 809 (Mo.App.1975). Moreover, the failure to preserve testimony elicited from a child precludes meaningful appellant review. Id. Failure to make a record of the in camera interview requires reversal even though not objected to at trial. *Williams v. Cole,* 590 S.W.2d 908, 911 (Mo. banc 1979)." *Plunkett v. Plunkett,* 757 S.W.2d 286, 288 (Mo.App. 1988).

Also see *Cassinger v. Cassinger,* 808 S.W.2d 412 (Mo.App.1991).

It is with reluctance this Court must reverse and remand this case, exposing the parties to the unnecessary stress and expense of a new trial. However, because of the derelictions and deficiencies that have been noted, this Court has no alternative. Upon retrial, the following admonition is appropriate. " 'When a trial judge who is sitting as a fact finder obtains information dehors the record, he must disqualify himself....' " *Plunkett v. Plunkett,* supra at 288.

Lest there be any doubt concerning the status of the same, it is by this Court ordered and adjudged that the "Memorandum of Judgment of Modification" of December 19, 1989, containing the "temporary orders", has expired and is of no force or effect. It is by this Court further ordered and adjudged that the judgment of July 31, 1990 is reversed. The cause is remanded for a new trial.

CROW, J., concurs.

PREWITT, J., dissents and files dissenting opinion.

PREWITT, Judge, dissenting.

I respectfully dissent.

Appellant father has one point on appeal contending "there was no showing of a substantial change in circumstances other than her former husband receiving military orders to relocate, and that there was no showing that such modification would serve the best interests of the child." The only authority cited by appellant is § 452.-410, RSMo 1986 (since amended, see RSMo. Supp.1990).

The brief does not complain of any temporary orders or the manner in which the trial court interviewed the children. It appears appellant had no complaint about the interviews then or now. Although perhaps failure to make a record of the interview requires reversal, even though not objected to at trial, that should not call for reversal where there is no objection on appeal.

The principal opinion also indicates that, due to the manner of interviewing the children, upon remand the trial judge should disqualify. This would cause another judge unfamiliar with the case to hear the matter and cause further delays. Suggesting disqualification is beyond the relief requested or called for here.

As I read *LaFon v. LaFon,* 811 S.W.2d 360 (Mo.banc 1991), a parent's move is sufficient for the trial judge to order a modifi-

cation. Little if anything else is required. I would affirm the order complained of.